# CHARLESTON.

STATE *v.* M. D. McCoy

(No. 6281)

Submitted March 12, 1929.    Decided March 19, 1929.

*Howard B. Lee,* Attorney General, and *R. A. Blessing,* Assistant Attorney General, for the State.

*E. L. Maxwell* and *Bruce Talbott,* for plaintiff in error.

MAXWELL, JUDGE:

Defendant prosecutes this writ of error to a conviction in the circuit court of Upshur county predicated on an indictment which charges that the defendant "did unlawfully bring and carry into the State of West Virginia, and did unlawfully carry from one place to another within said county and state, liquors, as defined by section 1, of chapter 32-a of the Code of West Virginia."

The defendant was arrested by the sheriff of Upshur county and a state policeman about ten o'clock at night in the fall

of 1926, on the Upshur county fair ground while the annual fair was being held. After the arrest, a revolver and a bottle of liquid were taken from the person of the defendant. He produced a license from the circuit court of another county permitting him to carry a revolver. There is substantial evidence that the man was in an intoxicated condition at the time of his arrest, though this is denied. The arresting officers say that he was intoxicated, and that that was why they arrested him. The policeman says that prior to the arrest he saw the defendant with his revolver ''right at the center of the top of his trousers, extending about half-way out, and he was sort of reeling as he came up through the fair ground with his head down.'' It is not necessary, however, to discuss this phase of the case at length because it is of only secondary importance. The question with which we are concerned is as to whether the defendant was transporting intoxicating liquor.

The sheriff testifies that the liquid found on the defendant's person was intoxicating liquor. An analysis was made of a sample of the liquid by a chemist in the State Prohibition Department, and he testifies that he ascertained an alcoholic content of 23.4 per centum by volume. He says: ''Synthetically, it was a mixture of water, alcohol and sugar.'' He further testifies that the sample also contained a slight tract of a bitter plant principal of some kind, but the sample which had been sent him was so small he could not determine the bitter element; that the indications were that the liquid had been derived from nitre, although it did not give the test of nitrates and nitrites as nitre does. Further, that sweet spirits of nitre contains about 95 per centum alcohol and that a method of driving off the nitre to make the beverage is to pour nitre into hot boiling water. In his opinion the liquid in question was derived from nitre. Defendant testifies that if he was carrying intoxicating liquor, it was not within his knowledge; that he had been suffering for two or three years from the effects of injury to his back and that he used sweet spirits of nitre for rubbing purposes, and that when he left his home in the afternoon preceding his arrest he was expecting to be away for two or three days, and

therefore took with him a bottle of sweet spirits of nitre to use as a liniment; that a few days prior to his arrest the partial contents of two or three bottles of nitre had been poured into one by the defendant's brother, Dr. O. D. McCoy, of Wheeling, who was then visiting at defendant's home in Barbour county. When asked on cross-examination what he had the two or three bottles of nitre at his home for, he said: "I bought it for stock purposes, for medical purposes, to treat my horses, or something like that." He denied that he drank any of this liquid or intended to do so. He says, however, that in the evening prior to his arrest, he took severe cramps and that a friend gave him some "bitters" which the friend said were "absolutely all right", and that defendant drank a glass of it. On cross-examination he says that the person who gave him the drink was "a perfect stranger to me".

Certain questions of law are presented for consideration. On the assumption that the indictment is founded under section 31-a of Chapter 32-a of the Code, the sufficiency of the indictment is challenged on the ground that it does not negative the exceptions contained in that section. It is true that an indictment based on that section must negative the exceptions therein contained. *State* v. *Harless*, 105 W. Va. 480. But we find that the indictment before us is not based on that section, but is based on section 31 of Chapter 32-a. Section 31 makes it "unlawful for any person to bring or carry into the state or carry from one place to another within the state * * * any quantity of intoxicating liquors, whether such liquors are intended for personal use or any other purpose." This section contains no exceptions, and there is therefore no occasion to negative exceptions in an indictment based on that section. Under section 31-a it is "unlawful for any person to order, purchase, sell, or cause intoxicating liquors, to be transported into the state, or from one place to another within the state, in any manner, except pure grain alcohol, for medicinal, pharmaceutical, scientific and mechanical purposes, and wine for sacramental purposes to be used by religious bodies, as now provided by law." The difference between the two sections is thus apparent, also

the necessity for negativing exceptions under the latter section while under the former section there are no exceptions to be negatived. We hold the indictment in the instant case to be sufficient.

Exception is also taken by the defendant to the action of the trial court in overruling his motion for a continuance, which motion was predicated on the fact of the absence of defendant's brother, Dr. O. D. McCoy. At the time of the hearing by the court of the defendant's motion for a continuance, he produced both a letter and a telegram from his brother indicating his inability to attend the trial because of press of professional engagements at Wheeling. It seems that the case had been postponed or continued at a prior term of court because of the inability of this same witness to be in attendance on. account of illness in his family. Defendant stated in support of his motion: ''I want to prove by him where the liquor came from and how I came to have it in my possession, and how it was put in the bottle I had in my possession at the time it was taken off of me. * * * He emptied it out of bottles we had in our medicine chest at home— emptied it out of those different bottles we had there into one.'' Granting that the Doctor would have testified that a few days before his brother's arrest he had poured the contents of two or three bottles of nitre into the bottle which was found on defendant's person, it by no means follows therefrom that the liquid at the time of the arrest was the same liquid that had come under the Doctor's notice. It does not appear to us wherein the Doctor's testimony could have had material bearing on the issue. Authorities need not be cited for the familiar rule that a motion for continuance is addressed to the sound discretion of the trial court under all the circumstances of the case, and that the appellate court will not reverse a judgment on the ground of the trial court's refusal to grant a continuance unless such refusal plainly appears to have been an abuse of discretion. In the case at bar we are of opinion there was no such abuse of discretion.

On the trial a small bottle of liquid was handed by the prosecuting attorney to the chemist Borradale while on the witness stand, and the contents of the bottle were identified

by him as sweet spirits of nitre. Thereupon, over the objection of the defendant, this liquid was admitted in evidence for the purpose of comparison with the liquid found on the person of the defendant at the time of his arrest. The action of the court in that particular is relied on here as one of the grounds for reversal. If the witness had been incompetent to identify the sample which was handed him, or if he had expressed any doubt about its identity, it would be evident that the sample ought not to have gone to the jury, but in the light of the identification by the expert, we are unable to perceive that the defendant's rights were in any wise prejudiced by permitting the sample to go to the jury in order that comparison might be made by the jury with the liquid that was taken from his person. This was important in ascertaining whether the defendant's contention was well taken that the liquid which he was transporting was sweet spirits of nitre, or whether as a fact it was a beverage that had been made from sweet spirits of nitre or in some other manner. This procedure is well founded. The law is thus stated in Underhill's Criminal Evidence (3rd ed.), Par. 100: "So in case the quality of an article, or its adaptability to a specific use or purpose, is in issue, a sample may be shown to the jury, together with a specimen of a like material which is shown to be of good quality or adapted to the required purpose, and the jury may then make a comparison to ascertain possible points of difference." In Encyclopaedia of Evidence, Vol. 4, p. 290, we find: "Where an article is introduced as a standard of comparison, preliminary evidence showing that in essential respects it affords a trustworthy standard of comparison is sufficient to render it admissible." See also, *People* v. *Buddenseick*, (N. Y.) 9 N. E. 44, and *Commonwealth* v. *Best*, (Mass.) 62 N. E. 748. A case closely similar is *State* v. *Newman*, 101 W. Va. 356. Cases holding that the introduction of real evidence for jury inspection is not prejudicial are legion, as are likewise those permitting experiments by experts in open court. Test by odor is approved. 16 C. J. 754; *State* v. *Stone*, 100 W. Va. 150. This matter is analagous to the comparison of disputed writings with proved

standards as is authorized by our statute. Code, Chapter 130, section 21-a.

The defendant excepted to the action of the court in giving to the jury the State's instructions Nos. 2 and 3. These instructions follow:

> 2. "The Court further instructs you that it is unlawful for any person to carry from one place to another within the State, in any manner whatever, any quantity of intoxicating liquor, whether such liquor is intended for personal use or any other purpose, and it is not necessary for the State to show that the defendant carried said liquor in an automobile, or in any other vehicle or conveyance, and it is also not necessary that the State show that the said liquor was carried for any particular distance. And if you believe from the evidence beyond all reasonable doubt that the defendant, M. D. McCoy, carried a quantity of intoxicating liquor in his pockets or about his person in any manner whatever, as charged in the indictment, from one place to another in said Upshur County, knowing it to be intoxicating, then you should find the defendant guilty of transporting intoxicating liquor as charged in the indictment."

> 3. "The Court further instructs the jury that the 'liquor' embraces all malt, vinous, or spiritous liquors, wine, porter, ale, beer or any other intoxicating drink, mixture or preparation of like nature and all malt or brewed drink, whether intoxicating or not and all liquid mixtures, or preparations whether patented or not, which will produce intoxication and all beverages containing so much as one half of one percentum of alcohol by volume, and if you believe from the evidence beyond a reasonable doubt that the defendant M. D. McCoy on the 27th day of August, 1926, in the Upshur County Fair Grounds, had in his possession and on his person, and was carrying from place to place in said Upshur County any such liquid, mixture or preparation, for beverage purposes, whether patented or not, capable of producing intoxication, then the defendant was transporting liquor and you should find him guilty as charged in the indictment."

In support of the criticism of instruction No. 2, it is said that it "entirely ignores the exceptions contained in section 31-a of Chapter 32-a." In the light of the fact that the indictment is not predicated on that section, as hereinabove explained, this criticism is not well taken. Other objections urged by the defendant to these instructions are, that there was no evidence whatever that the liquid found in defendant's custody was intoxicating liquor other than it contained 23.4 per centum by volume of alcohol, and that there was no evidence that the defendant had it in his possession for beverage purposes. Section 1 of Chapter 32-a of the Code, declares that: "* * * All beverages containing so much as one-half of one per centum of alcohol by volume, shall be deemed spiritous liquors, and all shall be embraced in the word 'liquors', as hereinafter used in this act." Certainly an alcoholic content of 23.4 per centum meets the requirements of the statute in the particular indicated. As to whether the liquor was being carried by the defendant for beverage purposes was a question of fact for jury determination under all the circumstances of the case. That matter did not rest alone on the defendant's denial that he was carrying the liquor for such purposes. The circumstances were to be considered. In this connection we are cited by the defendant to the case of *State* v. *Lough,* 97 W. Va. 241, wherein point 2 of the syllabus reads: "Criminal intent is a necessary element of the statutory crime of unlawfully carrying intxicating liquors from one place to another in this state." The criminal intent there referred to is not the intent with which a person knowingly carries intoxicating liquors, but involves the question as to whether he actually knows that he has it in his possession and is transporting it. In that case liquor was found in a trunk at the defendant's home, but she denies ownership of the trunk or that she had any knowledge of the presence of liquor therein. She had caused the trunk to be transported from the railroad station at Wheeling to her home in Cameron at the request of a man who had recently been a roomer in her home. On that state of facts it was held improper to instruct the jury that if they found from the evidence beyond a reasonable doubt that the defendant

did transport intoxicating liquors into the town of Cameron she should be found guilty as charged in the indictment. The court said: "Guilty intent is a necessary element of the crime." And, in arguendo, stated: "How easy in a surreptitious manner to slip liquor into another's automobile, travelling bag or clothing!" The instant case involves no question as to knowledge on the part of the defendant as to the presence of the liquor on his person. He knew he had it. The rule of the *Lough* case is therefore not applicable. To repeat, the purpose for which he was carrying the liquor was a jury question, and in our opinion the above instructions fairly submitted that matter to the jury.

Error is also assigned to the action of the court in refusing to give defendant's instructions Nos. 7 and 8, which are as follows:

> 7. "The Court instructs the jury that even though you may believe from the evidence, beyond a reasonable doubt, that the liquid introduced in evidence by the State is sweet spirits of nitre so changed that it could be used as a beverage and that it *is intoxicating, if you further believe from the evidence that the defendant had it for a medicine, then you shall find the defendant not guilty."

> 8. "The Court further instructs the jury that unless you believe from the evidence, beyond a reasonable doubt, that the defendant transported the liquid introduced in evidence from one place to another in this county knowing it was intoxicating (and intending to use it as a beverage,) then you shall find him not guilty." The words in parenthesis indicate proposed change by the court.

The court offered to give instruction No. 8 in a modified form, but defendant declined to accept the proposed modification. Both instructions must therefore be considered in the form in which they were tendered. If the defendant was entitled to have presented to the jury the matters coverd by his instruction No. 7, the propositions therein contained were substantially covered by his instruction No. 6, which was

given to the jury. No. 6 reads: ''The Court instructs the jury, that if you believe the defendant had the liquid introduced by the state in evidence in his possession and transported the same from one place to another in this county for the purpose of using it exclusively as a medicine, then the jury shall find the defendant not guilty, even though the jury may believe the liquid could be used as a beverage and is intoxicating.'' Defendant's instruction No. 8 was properly refused because an individual who knowingly carries on his person from one place to another liquor of high alcoholic content, useable as a beverage, is presumed to know that it is intoxicating. It is a matter of common knowledge that alcohol intoxicates. 1 Woolen & Thornton on Intoxicating Liquors, section 9; *Snider* v. *State,* (Ga.) 7 S. E. 631. There are many analagous cases; among them: *State* v. *Durr,* 69 W. Va. 251; *State* v. *Dennison,* 85 W. Va. 261; *State* v. *Hensley,* 86 W. Va. 434; *State* v. *Hussion,* 91 W. Va. 146; *State* v. *Willey,* 97 W. Va. 253; *Thacker* v. *Commonwealth,* 131 Va. 707; *State* v. *Schuck,* (N. D. 201 N. W. 342; *Rhodes* v. *People,* (Col.) 237 Pac. 1114. The presumption that a person in the circumstances recited knew what he was doing should prevail in the absence of satisfactory explanation. In addition to the presumption of fact, there is a presumption of law. Section 1, Chapter 32-a, above referred to, declares that any liquid containing as much as one and one-half per centum of alcohol by volume shall be deemed a spirituous liquor within the inhibitions of the statute. All persons are presumed to know the law. Ignorance thereof is no excuse for its violation. This instruction would improperly cast on the State the burden of proving that the defendant knew that the liquor was intoxicating.

There thus appearing to be no prejudicial error in the record, we affirm the judgment of the trial court.

*Affirmed.*