671 S.E.2d 693

**WEST VIRGINIA DEPARTMENT OF TRANSPORTATION, Division of Highways, Respondent Below, Appellee,**

v.

**PARKERSBURG INN, INC., Petitioner Below, Appellant.**

No. 33882.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 8, 2008.

Decided Nov. 5, 2008.

Marvin W. Masters, April D. Ferrebee, The Masters Law Firm LC, Charleston, for Appellant.

Leah R. Chappell, Adams, Fisher & Chappell, PPLC, Ripley, Robert B. Paul, West Virginia Department of Transportation, Division of Highways, Charleston, for Appellee.

**PER CURIAM:[1]**

Parkersburg Inn, Inc., appellant/respondent below (hereinafter "the Inn"), appeals an order of the Circuit Court of Wood County denying its motion for a new trial. The case involved a petition filed by the West Virginia Department of Transportation, Division of Highways, appellee/petitioner below (hereinafter "DOH"), to determine whether the Inn was entitled to compensation for damages caused by a road construction project. The issue was submitted to a jury. The jury rendered a verdict in favor of DOH. In this appeal, the Inn contends that the circuit court committed the following errors: (1) giving DOH's Instruction No. 2; (2) permitting a witness to testify as an expert in an area outside of his expertise; (3) prohibiting one of the Inn's witnesses from giving expert testimony; and (4) excluding certain appraisal evidence. After a careful review of the briefs, record submitted on appeal, and listening to the oral arguments of the parties, we affirm.

**I.**

**FACTUAL AND PROCEDURAL HISTORY**

In 2003, the Inn owned and operated a Holiday Inn hotel in Parkersburg, West Virginia, near Interstate 77 and Route 50.[2] In 2003, DOH engaged in road construction on Route 50 near the Inn's hotel. The construction involved expanding Route 50 from a two-lane highway to a four-lane highway. It also involved altering its location. As a result of the expansion and change in the location of Route 50, a new traffic pattern was initiated on September 8, 2003. That traffic pattern altered the way in which the Inn's hotel could be accessed by patrons.

---

**1.** Pursuant to an administrative order entered on September 11, 2008, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

**2.** The Inn operated the hotel for over twenty years.

Subsequent to Route 50 being relocated, the Inn filed a petition for a writ of mandamus to compel DOH to institute a condemnation proceeding against its hotel.[3] By order dated October 5, 2004, the circuit court issued the writ compelling DOH to institute a condemnation proceeding. On October 29, 2004, DOH filed a petition to determine whether any diminution in the value of the Inn's hotel resulted from its road construction project that relocated Route 50.

After an extensive period of discovery, the case was tried before a jury on January 30, 2007. During the trial, both parties presented testimony from numerous lay and expert witnesses regarding the effect of the road construction project on the Inn's hotel. The evidence presented by the Inn suggested, in essence, that the road construction project and the relocation of Route 50 by DOH caused the Inn's hotel to sustain a loss in business. On the other hand, DOH presented evidence that factors other than its road construction project and relocation of Route 50 caused a decrease in the Inn's hotel income. For example, there was evidence that, around the time at issue, the Inn began having lower than normal occupancy rates. Also, a new hotel and conference center was opened in the vicinity, and a competing hotel completed extensive renovations. Additionally, the Inn raised its room rates. The jury considered all of the evidence. The jury returned a verdict in favor of DOH on February 14, 2007.[4] Subsequent to the trial court's denial of the Inn's post-trial motion for a new trial, the Inn filed this appeal.

## II.

## STANDARD OF REVIEW

We are asked to review the circuit court's denial of the Inn's post-trial motion for a new trial. Our reviewing standard for denial of a new trial motion was articulated in *Tennant v. Marion Health Care Foundation, Inc.,* 194

W.Va. 97, 104, 459 S.E.2d 374, 381 (1995), as follows:

We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

*See also* Syl. pt. 4, *Sanders v. Georgia–Pacific Corp.,* 159 W.Va. 621, 225 S.E.2d 218 (1976) ("Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence.").

One of the issues raised by the Inn involves a jury instruction that was tendered by DOH. In Syllabus point 6 of *Tennant* this Court set out the standard of review of a trial court's jury instructions as follows:

The formulation of jury instructions is within the broad discretion of a circuit court, and a circuit court's giving of an instruction is reviewed under an abuse of discretion standard. A verdict should not be disturbed based on the formulation of the language of the jury instructions so long as the instructions given as a whole are accurate and fair to both parties.

*See also Doe v. Wal–Mart Stores, Inc.,* 210 W.Va. 664, 671, 558 S.E.2d 663, 670 (2001).

The remaining issues raised by the Inn involve the admissibility of certain evidence. This Court has made clear that "[a] party challenging a circuit court's evidentiary rulings has an onerous burden because a reviewing court gives special deference to the evidentiary rulings of a circuit court." *Gentry v. Mangum,* 195 W.Va. 512, 518, 466 S.E.2d 171, 177 (1995). As a result of such deference, "[a] trial court's evidentiary rulings, as well as its application of the Rules of

---

**3.** Documents pertinent to the mandamus proceeding and the initiation of the instant proceeding were not designated as part of the record on appeal. *See* Syl. pt. 6, *In re Michael Ray T.,* 206 W.Va. 434, 525 S.E.2d 315 (1999) ("The responsibility and burden of designating the record is on the parties, and appellate review must be limited to those issues which appear in the record presented to this Court.").

**4.** In July of 2007, after the jury verdict, the Inn's hotel went out of business.

Evidence, are subject to review under an abuse of discretion standard." Syl pt. 4, *State v. Rodoussakis,* 204 W.Va. 58, 511 S.E.2d 469 (1998). *See also* Syl. pt. 1, in part, *McDougal v. McCammon,* 193 W.Va. 229, 455 S.E.2d 788 (1995) ("Absent a few exceptions, this Court will review evidentiary ... rulings of the circuit court under an abuse of discretion standard.").

With these reviewing standards in place, we will now address the merits of the issues raised by the Inn.

### III.

### DISCUSSION

#### A. *DOH's Instruction No. 2*

The first issue presented by the Inn involves an instruction tendered by DOH, modified by the trial court, and read to the jury. With respect to the giving of jury instructions, this Court has held that

"[a] trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not misle[d] by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy."

*Keesee v. General Refuse Serv., Inc.,* 216 W.Va. 199, 209, 604 S.E.2d 449, 459 (2004) (quoting Syl. pt. 4, in part, *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995)). We have also long held that " '[i]t will be presumed that a trial court acted correctly in giving ... instructions to the jury, unless it

appears from the record in the case that the instructions were prejudicially erroneous[.]' " *Hicks v. Ghaphery,* 212 W.Va. 327, 334, 571 S.E.2d 317, 324 (2002) (quoting Syl. pt. 1, in part, *State v. Turner,* 137 W.Va. 122, 70 S.E.2d 249 (1952)).

 Over the objections of the Inn, the trial court accepted DOH's Instruction No. 2. That instruction, as modified by the trial court,[5] read as follows:

The Respondents' right of access to public roads is not affected within the meaning of the guarantee against public encroachment so long as a convenient way of ingress and egress remains. The Constitution does not undertake to guarantee a property owner the public maintenance of the most convenient route to his door. The law will not permit the Respondents to be cut off from public thoroughfares, but they must content themselves with such route for outlet as the West Virginia Division of Highways may deem most compatible with the public welfare as long as access is reasonable and adequate. When the Respondents acquired property in the State of West Virginia, they did so in tacit recognition of these principles.

The above instruction was taken almost verbatim from two prior decisions of this Court. *See State ex rel. Woods v. State Road Comm'n,* 148 W.Va. 555, 560–61, 136 S.E.2d 314, 318 (1964); *Richmond v. City of Hinton,* 117 W.Va. 223, 227, 185 S.E. 411, 412 (1936). The Inn contends that the substance of the language in Instruction No. 2 was merely obiter dicta in *Woods* and *Richmond;* therefore, it could not be used as an instruction to the jury.[6] Even if we agreed with the Inn that the language in Instruction No. 2 was merely obiter dicta in *Woods* and *Richmond,* we reject the contention that such language

---

**5.** The trial court added some additional wording to the instruction that was offered by counsel for the Inn. Here, DOH contends that the Inn waived any objections to the instruction because no objection was made after the language of the instruction was modified. We disagree. The record clearly shows that counsel for the Inn maintained its objection to the instruction notwithstanding the added language.

**6.** "Dicta normally comes in two varieties: *obiter dicta* and *judicial dicta. Obiter dicta* are comments in a judicial opinion that are unnecessary to the disposition of the case. *Judicial dicta* are

comments in a judicial opinion that are unnecessary to the disposition of the case, but involve an issue briefed and argued by the parties. *Judicial dicta* have the force of a determination by a reviewing court and should receive dispositive weight in an inferior court. Similarly, *obiter dicta* of a court of last resort can be tantamount to a decision and therefore binding in the absence of a contrary decision of that court." *People v. Williams,* 204 Ill.2d 191, 273 Ill.Dec. 250, 788 N.E.2d 1126, 1136 (2003) (internal quotations and citations omitted).

could not be used as an instruction to the jury.[7] The mere fact that a "correct" statement of law is set out in an opinion of this Court as obiter dicta does not impugn its integrity as a valid proposition of law. As a general rule, legally valid principles of law set out in an opinion as "[d]icta of the Supreme Court should not be disregarded by [a trial] court without a compelling reason." *Mendoza v. Easton Gas Co.*, 197 Cal.App.3d 781, 788, 243 Cal.Rptr. 136 (1988). *See also Young v. New Process Steel*, 419 F.3d 1201, 1204 (11th Cir.2005) ("Even though not required to adhere to [dicta set out in] *Pedraza[v. United Guaranty Corp.*, 313 F.3d 1323 (11th Cir.2002)] ..., we nonetheless choose to follow it. The statement makes sense, and it expresses a conclusion compelled by the reasoning that led the Court to reach the result it did in *Pedraza.*"); *Burnette v. Perkins & Assocs.*, 343 Ark. 237, 33 S.W.3d 145, 149 (2000) ("While this statement of the court [in *Marsh & McLennan of Arkansas v. Herget*, 321 Ark. 180, 900 S.W.2d 195 (1995)] is dicta, as the commissioners and the sewer district point out, it may nonetheless be persuasive and useful."); *State v. Johnson*, 130 N.M. 6, 15 P.3d 1233, 1239 (2000) ("While we agree with the Court of Appeals that footnote 1 in *Boone[ v. State*, 105 N.M. 223, 731 P.2d 366 (1986)] was dicta and not binding authority, the Court of Appeals should give such language adequate deference and not disregard it summarily."); *Lee v. Sauvage*, 38 Wash.App. 699, 689 P.2d 404, 408 (1984) ("Even if the quoted language is dictum, that does not mean that we are bound to disregard it, as Lee implies.").

 As previously mentioned, a jury "instruction is proper if it is a correct statement of the law[.]" Syl. pt. 5, in part, *Jenrett v. Smith*, 173 W.Va. 325, 315 S.E.2d 583 (1983). The alleged obiter dicta that was taken from *Woods* and *Richmond* accurately reflects correct legal principles, regardless of how those principles are categorized.[8] Consequently, we find no error in the trial court's decision to accept DOH's Instruction No. 2.[9]

## B. Permitting Rodney Meers to Testify as an Expert in an Area Outside of His Expertise

 The next issue raised by the Inn involves the trial court's ruling that permit-

---

7. We disagree with the Inn's contention that the language taken from *Woods* and *Richmond* was obiter dicta. In both cases the language in question was an integral part of the analysis of the issues presented to the Court.

8. The principles set out in *Woods* and *Richmond* are found in W. Va.Code § 17–4–47 (1963) (Repl. Vol.2004) in substantial part as follows:

 (a) Access to and from state highways from and to real property used or to be used for commercial, industrial or mercantile purposes or from and to real property that is subdivided into lots is a matter of public concern and shall be regulated by the state road commissioner to achieve the following purposes:

 (1) To provide for maximum safety of persons traveling upon, entering or leaving state highways;

 (2) To provide for efficient and rapid movement of traffic upon state highways;

 (3) To permit proper maintenance, repair and drainage of state highways; and

 (4) To facilitate appropriate public use of state highways.

 (b) Except where the right of access has been limited by or pursuant to law, every owner or occupant of real property abutting upon any existing state highway has a right of reasonable means of ingress to and egress from such state highway consistent with those policies expressed in subsection (a) of this section and any regulations issued by the commissioner under section forty-eight of this article.

*See also Retail Designs, Inc. v. West Virginia Div. of Highways*, 213 W.Va. 494, 499–500, 583 S.E.2d 449, 454–55 (2003) ("The language of this statute is plain in announcing that access between a state highway and commercial property is a matter of public concern.... Furthermore, ... the statute goes on to require the DOH to regulate such access to achieve certain enumerated purposes.").

9. The Inn also contends that the instruction should not have been given because there was no evidence to show that when it acquired the hotel, it did so "in tacit recognition of" the principles set out in the instruction. The Inn misunderstands the nature of the "in tacit recognition" provision in the instruction. That provision is not an evidentiary dependent statement. The provision merely informs the jury that, as a property owner, the Inn is presumed to know that DOH can reasonably regulate the placement of public roads. In other words, the provision is merely an embodiment of the general principle that " '[a]ll persons are presumed to know the law. Ignorance thereof is no excuse[.]' " *Hartley Hill Hunt Club v. County Comm'n of Ritchie County*, 220 W.Va. 382, 391 n. 13, 647 S.E.2d 818, 827 n. 13 (2007) (quoting *State v. McCoy*, 107 W.Va. 163, 172, 148 S.E. 127, 130 (1929)).

ted DOH's expert, Rodney Meers, to testify concerning the effect on the Inn's hotel business of altering the location of Route 50 and the associated road construction. The Inn took the position that Mr. Meers was not qualified to render such an opinion because he was a real estate appraiser and not a hotel manager. In Syllabus point 5 of *Gentry v. Mangum*, 195 W.Va. 512, 466 S.E.2d 171 (1995), this Court set out the requirements necessary for a witness to qualify as an expert:

> In determining who is an expert, a circuit court should conduct a two-step inquiry. First, a circuit court must determine whether the proposed expert (a) meets the minimal educational or experiential qualifications (b) in a field that is relevant to the subject under investigation (c) which will assist the trier of fact. Second, a circuit court must determine that the expert's area of expertise covers the particular opinion as to which the expert seeks to testify.

The decision in *Gentry* also made clear that:

> One knowledgeable about a particular subject need not be precisely informed about all the details of the issues raised in order to offer an opinion but merely possess enough information to assist the jury. Whether the witness is the best expert witness on the specific subject is a matter that goes to weight of testimony and not to qualifications.

*Gentry,* 195 W.Va. at 529, 466 S.E.2d at 171.

Mr. Meers has a bachelor's degree in business from the University of Georgia. He has been a certified commercial real estate appraiser for twenty-five years and is licensed in West Virginia, Virginia and North Carolina. Mr. Meers has experience in appraisal of large business parks, office buildings, motels, hotels, shopping centers and malls. The appraisal work by Mr. Meers includes performing market studies to advise clients on such matters as area rent data,

whether or not to build a facility, and the optimum location for building a facility. The evidence revealed that Mr. Meers had performed hundreds of condemnation appraisals. Mr. Meers testified regarding his condemnation appraisal work as follows:

> Q. Okay. Would you walk us through, first, the different kinds of projects that you appraised in the context of condemnation work?
>
> A. We've done many road projects for the State of North Carolina in the region surrounding the Winston Salem/Greensboro area and Charlotte. There are many projects going on, ranging from interstate quality bypass routes around Greensboro to widening projects along interstate highways to surface and bridge projects in the various communities.
>
> Q. All Right. And the properties that you've actually appraised, would you describe for the jury what types [of] properties those are?
>
> A. They run from simple appraisal of vacant land up to office buildings and shopping malls and hotels.
>
> Q. Okay. So you have appraised shopping centers and hotels?
>
> A. Yes, I have.
>
> Q. Prior to today, how many hotels approximately have you appraised?
>
> A. Over the course of my career I can account for twenty-five, but sometimes the memory fades and those records-
>
> Q. Okay. So it could be a few more than twenty-five?
>
> A. It could be, yes, but I can account for at least twenty-five.[10]

(Footnote added). Based upon Mr. Meers' qualifications, as set out in the record, we believe that Mr. Meers satisfied the test articulated in Syllabus point 5 of *Gentry.*

Mr. Meers conducted a study and generated a report that involved collecting data on

---

**10.** The instant proceeding was the second time Mr. Meers testified as an expert witness. This fact, however, is of no moment. *See Sharon B.W. v. George B.W.,* 203 W.Va. 300, 304, 507 S.E.2d 401, 405 (1998) ("Circuit courts should not base their determination of whether an individual is an expert on the number of times an individual has appeared in court: Whether a proffered expert witness has testified in court on prior occasions, while relevant, certainly is not dispositive. Once an expert witness passes the minimal threshold, further credentials affect the weight of the testimony not its admissibility.").

hotels in Wood County, state-wide and in surrounding states. Based upon an analysis of that data, Mr. Meers concluded that neither the re-routing of Route 50 nor the road construction in general had an impact on the Inn's hotel business. Mr. Meers' opined that other factors may have caused a downturn in the Inn's hotel business, such as room rates, competition from other hotels and the Inn's need to renovate.

■ The Inn contends that Mr. Meers "was not qualified to give any opinions on the management of any hotel." We believe the Inn mischaracterizes Mr. Meers' testimony. Simply put, Mr. Meers did not render an opinion on how to manage a hotel. It is clear that Mr. Meers was asked to opine on whether altering the location of Route 50, or the road construction in general, had an impact on the Inn's hotel business. In making this determination, Mr. Meers consulted a wide range of hotel data. The mere fact that some of the data he examined involved hotel rates, for example, did not transform Mr. Meers testimony into that of giving an opinion on hotel management.[11] This Court has never held that an expert may not consider incidental data that is in the area of another's expertise, but is relevant to rendering an opinion that is in the testifying expert's area of expertise.[12] See Gentry, 195 W.Va. at 525 n. 18, 466 S.E.2d at 184 n. 18 ("Neither a degree nor a title is essential, and a person with knowledge or skill borne of practical experience may qualify as an expert, although the circuit court may exclude testimo-ny if the experience is too far removed from the subject of the proposed testimony."). Moreover, the issue of "[w]hether the witness is the best expert witness on the specific subject is a matter that goes to weight of testimony[.]" 2 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 7–2(A)(1) (4th ed.2000). *See also Jones v. Patterson Contracting, Inc.,* 206 W.Va. 399, 405, 524 S.E.2d 915, 921 (1999) (holding that general safety engineer could testify as to mining safety issues); *Dolen v. St. Mary's Hosp. of Huntington, Inc.,* 203 W.Va. 181, 185, 506 S.E.2d 624, 628 (1998) (permitting dentist to testify as expert on whether emergency room doctors deviated from standard of care in rendering treatment to patient with injured jaw); *Board of Educ. of McDowell County v. Zando, Martin & Milstead, Inc.,* 182 W.Va. 597, 612, 390 S.E.2d 796, 811 (1990) (permitting mining engineer to testify as expert witness on matters of structural engineering and design). Objections as "'to the strength of an expert's credentials . . . go to weight and not to the admissibility of their testimony.'" *San Francisco v. Wendy's Int'l, Inc.,* 221 W.Va. 734, 745, 656 S.E.2d 485, 496 (2007) (quoting *Gentry,* 195 W.Va. at 527, 466 S.E.2d at 186). *See also In re Flood Litig. Coal River Watershed,* 222 W.Va. 574, 583, 668 S.E.2d 203, 212, (2008) ("The fact that the plaintiffs' experts did not have substantial prior personal experience in assessing the effect of land disturbance from large-scale timbering operations . . . went to the weight of their evidence; but their lack of

11. In assessing the testimony of Mr. Meers as an appraisal expert, versus that of a hotel manager, the circuit court made the following observations during a hearing on the Inn's post-trial motion for a new trial:

I'm concerned if we brought in a hotel manager, I guess maybe the hotel manager could testify as to the particular and specific fact as to whether raising the rates caused people to not go to the hotel. I don't know that a hotel manager would know that or be able to get together all the other facts and circumstances that would be necessary to reach that conclusion.

To be an expert in this State, under the rules, you have to be able to, as a result of education, training and there's some other factors, be able to assist the trier-of-fact in understanding an issue. This Court believes that Mr. Meers met those qualifications, and any deficit that there may be in his qualifications would go to the weight and credit that the jury could have placed in that testimony.

The Holiday Inn makes some compelling arguments as to why one should not believe or accept the conclusions that Mr. Meers reaches, but that's exactly what they are, arguments. Arguments that could have been presented to the jury and maybe were, I don't recall. But given the standard for the admissibility of expert witnesses and expert testimony, the testimony of Mr. Meers was admissible and, as I indicated, any deficits could be argued to the jury.

12. There is "insufficient evidence on the record to support a finding that evidence upon which [Mr. Meers] relied is not of the type reasonably relied upon by experts in the field." *Gentry,* 195 W.Va. at 529 n. 25, 466 S.E.2d at 188 n. 25.

such experience did not render that evidence inadmissible."). Consequently, we find no error in admitting the expert testimony of Mr. Meers.

### C. Prohibiting Jim Cochrane from Giving Expert Testimony

During the trial, the Inn sought to call Jim Cochrane as an expert witness. Mr. Cochrane had experience as a hotel manager and real estate developer. The Inn sought to have Mr. Cochrane give expert testimony that attributed the decline in the Inn's hotel business to the re-routing of Route 50. The trial court precluded Mr. Cochrane from testifying as an expert because the Inn failed to disclose him as an expert *prior to trial.* The circuit court addressed the matter during the Inn's post-trial motion for a new trial as follows:

> In terms of ... the testimony of Mr. Cochrane, you know, certain discovery was requested by the Department of Highways, certain discovery information concerning experts. None of that was provided by Parkersburg Inn as it relates to Mr. Cochrane.
>
> Mr. Cochrane was asked if he was going to offer expert opinion. He said he was not aware of any. If-and when he said that, counsel for Parkersburg Inn was there.
>
> There was some mention about potential confusion. Well, if there was any confusion on the witness's part or on counsel for the Parkersburg Inn's part, then it was their obligation to clear up that confusion. And during that deposition if it was somehow confusing as to whether Mr. Cochrane was going [to] offer expert testimony, then I believe that it was the obligation of the party offering that witness to clarify it and make clear on-the-record as to whether a witness is going to be or not going to be an expert. If any confusion resulted, then the party who created the confusion must bear

the harm, if harm results from that confusion.

We explained the importance of the discovery process in *Graham v. Wallace,* 214 W.Va. 178, 588 S.E.2d 167 (2003), as follows:

> The discovery process is the manner in which each party in a dispute learns what evidence the opposing party is planning to present at trial. Each party has a duty to disclose its evidence upon proper inquiry. The discovery rules are based on the belief that each party is more likely to get a fair hearing when it knows beforehand what evidence the other party will present at trial. This allows for each party to respond to the other party's evidence, and it provides the jury with the best opportunity to hear and evaluate all of the relevant evidence, thus increasing the chances of a fair verdict.

*Graham,* 214 W.Va. at 184–85, 588 S.E.2d at 173–74. Pursuant to Rule 26(b)(4)(A)(I) of the West Virginia Rules of Civil Procedure, "[a] party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial." [13] DOH asserts that during the course of discovery, the Inn provided a witness list that included 64 witnesses. Only three witnesses were listed as experts. More importantly, Mr. Cochrane *was not* listed as an expert witness.[14] To the extent that the Inn's initial response to discovery requests did not list Mr. Cochrane as an expert witness, Rule 26(e)(1)(B) required the Inn to supplement its initial response by naming Mr. Cochrane as an expert. Rule 26(e)(1)(B) states

> [a] party is under a duty seasonably to supplement that party's response with respect to any question directly addressed to ... [t]he identity of each person expected to be called as an expert witness at trial, the subject matter on which the expert is expected to testify, and the substance of the expert's testimony.

---

**13.** Rule 16(c)(7) states "[t]rial courts may require parties to prepare and serve witness lists, including identification of experts, by specific dates." Franklin D. Cleckley, Robin J. Davis & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 16(c)(7) (3d ed.2008).

**14.** The record does not contain documentation of DOH's discovery requests, nor the responses thereto. *See* 3, *supra.*

It is also provided by Rule 26(e) "that if supplementation is not made as required by the rule, the court, upon motion or upon its own initiative, may impose an appropriate sanction as provided for under Rule 37." Cleckley, et al., *Litigation Handbook* § 24(e). This Court has noted that "[t]he failure to timely disclose an expert witness is serious conduct that may warrant the exclusion of that expert's testimony[.]" *Kiser v. Caudill,* 210 W.Va. 191, 197, 557 S.E.2d 245, 251 (2001). *See also Jenkins v. CSX Transp., Inc.,* 220 W.Va. 721, 727, 649 S.E.2d 294, 300 (2007) (affirming trial court decision to prohibit certain testimony by expert witness because of failure to supplement discovery response).

 Here, the Inn failed to supplement its discovery responses by timely informing DOH that Mr. Cochrane would testify as an expert.[15] In *Prager v. Meckling,* 172 W.Va. 785, 310 S.E.2d 852 (1983), we set out the test for excluding evidence for failure to supplement discovery disclosures as follows:

Factors to be considered in determining whether the failure to supplement discovery requests under Rule 26(e)([1]) of the Rules of Civil Procedure should require exclusion of evidence related to the supplementary material include: (1) the prejudice or surprise in fact of the party against whom the evidence is to be admitted; (2) the ability of that party to cure the prejudice; (3) the bad faith or willfulness of the party who failed to supplement discovery requests; and (4) the practical importance of the evidence excluded.

Syl. pt. 5, *Prager, id.*[16]

 Applying the *Prager* factors to this case, we believe that the record supports finding DOH was prejudiced and surprised by the failure to timely disclose Mr. Cochrane as an expert witness. Mr. Cochrane indicated during his deposition that he was not going to provide expert testimony. Insofar as the issue of Mr. Cochrane testifying as an expert was not ruled upon until he took the stand to testify, there was no reasonable way of curing the prejudice.[17] Secondly, although the Inn's failure to disclose Mr. Cochrane as an expert may not have been in bad faith or made willfully, such failure did exhibit gross negligence. Thirdly, insofar as the Inn produced other expert witnesses and lay witnesses to testify that altering the location of Route 50, and the road construction, damaged its hotel business, the exclusion of Mr. Cochrane's testimony did not effectively destroy the Inn's case.[18] In sum, we find no

**15.** The following testimony was given by Mr. Cochrane during his deposition:
Q. Do you anticipate offering any expert opinions at the trial of this case?
A. I am not prepared to—I haven't done any research or done any preparation or any type of analysis to give any type of expert opinion, no.
Q. So would it be fair to say that you do not intend to offer any expert opinions at the trial of this case?
A. Expert opinions as he defined those to me? Yes, that's fair.
This Court has previously noted that our rules of evidence will "not permit an expert to render an opinion during a trial, when the expert expressly states during a deposition that no opinion would be given. This situation is tantamount to trial by ambush." *State ex rel. Krivchenia v. Karl,* 215 W.Va. 603, 607 n. 6, 600 S.E.2d 315, 319 n. 6 (2004).

**16.** The *Prager* factors were actually developed for analysis because of a failure to supplement under Rule 26(e)(2). We have previously applied these factors to a Rule 26(e)(1) violation. *See Martin v. Smith,* 190 W.Va. 286, 291, 438 S.E.2d 318, 323 (1993) (applying *Prager* factors to a Rule 23(e)(1) violation). Further, factors similar to *Prager's* have been suggested for a Rule 26(e)(1) violation. *See* Cleckley, et al., *Litigation Handbook* § 26(e)(1) ("If there is a violation of the duty to seasonably supplement information regarding an expert [under Rule 26(e)(1)], the factors that the court should consider in determining whether evidence should be excluded are ... the explanation, if any, for the failure to name the witness, the importance of the testimony of the witness, the need for time to prepare to meet the testimony, and the possibility of a continuance.").

**17.** DOH contends that it filed a pretrial motion in limine to preclude Mr. Cochrane from testifying as an expert but that issue was not addressed until Mr. Cochrane took the stand. The motion in limine was not designated as part of the record in this appeal. *See 3, supra.*

**18.** The Inn also argues that the circuit court should have allowed Mr. Cochrane to render opinions as a lay witness. *See* W. Va. R. Evid. 701 ("If the witness is not testifying as an expert, his or her testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the per-

abuse of discretion in the trial court's decision to prohibit Mr. Cochrane from presenting expert testimony.

### D. Excluding Certain Appraisal Evidence

 The last issue raised by the Inn involves an appraisal report that was prepared by one of its witnesses, Randy Reed. The report indicated that the Inn's hotel was valued at over $8 million dollars. The trial court precluded Mr. Reed's report from being introduced into the record as an exhibit.

It has been recognized that "[i]tems of documentary or real evidence that were admitted into evidence may be taken into closed sessions during [jury] deliberations." 2 Cleckley, *Handbook on Evidence* § 11–3(C)(1).[19] We have held that "the use of either real or demonstrative evidence is left within the discretion of the trial court." *Runner v. Cadle Co.*, 204 W.Va. 21, 22, 511 S.E.2d 132, 133 (1998). With respect to the admission of an exhibit this Court has held:

> Rule 401 of the West Virginia Rules of Evidence requires the trial court to determine the relevancy of the exhibit on the basis of whether the [exhibit] is probative as to a fact of consequence in the case. The trial court then must consider whether the probative value of the exhibit is substantially outweighed by the counterfactors listed in Rule 403 of the West Virginia Rules of Evidence.

Syl. pt. 10, in part, *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994). Rule 403 pro-

vides that a trial court may exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *See Rozas v. Rozas*, 176 W.Va. 235, 237, 342 S.E.2d 201, 204 (1986) ("[W]here the evidence is unnecessary, cumulative, confusing or misleading the trial judge may properly refuse to admit it.").

The trial court determined that Mr. Reed's report would not be admitted into evidence as an exhibit because it was duplicative of his testimony and could cause confusion for the jury during its deliberations. *See State v. Knuckles*, 196 W.Va. 416, 424, 473 S.E.2d 131, 139 (1996) ("[T]he role of the trial court is to keep from the jury's eyes or ears evidence that may be misleading."). Assuming, without deciding, that the trial court should have allowed the report to be introduced into evidence as an exhibit,[20] we find its exclusion to be harmless error for two reasons. *See* W. Va. R. Civ. Pro. 61 ("No error in ... the exclusion of evidence ... is ground for granting a new trial ... unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error ... in the proceeding which does not affect the substantial rights of the parties.").

 First, any error was harmless because the Inn had an opportunity to elicit testimony from Mr. Reed regarding everything contained in his report. Second, any

---

ception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."). Under the facts of this case, we do not find that the circuit court erred in prohibiting Mr. Cochrane from rendering opinions as a lay witness. To allow Mr. Cochrane to testify as a lay witness to matters he was prohibited from testifying to as an expert would reward the Inn for its failure to comply with the rules of discovery. Further, this Court will not allow a party to "evade the expert witness disclosure requirements set forth in [our rules] by simply calling an expert witness in the guise of a layperson." *United States v. Garcia*, 291 F.3d 127, 139 n. 8 (2nd Cir.2002). *See also United States v. Perkins*, 470 F.3d 150, 156 (4th Cir.2006) (noting that federal "Rule 701 forbids

the admission of expert testimony dressed in lay witness clothing[.]'").

**19.** *See also* Syllabus, *Runner v. Cadle Co.*, 204 W.Va. 21, 511 S.E.2d 132 (1998) ("A trial court may not allow a jury to take exhibits not admitted in evidence to the jury room. Allowing a jury to take exhibits to the jury room not admitted in evidence or those offered but excluded from evidence may constitute reversible error where prejudice results therefrom.").

**20.** *See* Syl. pt. 3, *Rozas v. Rozas*, 176 W.Va. 235, 342 S.E.2d 201 (1986) ("If an expert's report is not introduced into evidence, there is no right to cross-examine the report's preparer in open court.").

error was harmless because Mr. Reed's appraisal report was done in 2002,[21] for the purpose of placing a value on the Inn's hotel in conjunction with its efforts to obtain a bank loan.[22] In other words, the appraisal report, and Mr. Reed's testimony that the Inn's hotel was valued at over $8 million dollars in 2002, went to the issue of damages.[23] This Court has held that "[w]hen a plaintiff does not prevail as to liability, any errors he claims as to the issue of damages are harmless because, without a verdict on the liability issue, the plaintiff is not entitled to any damages." Syl. pt. 3, *Morris v. Boppana*, 182 W.Va. 248, 387 S.E.2d 302 (1989). Finally, we have previously noted that "it is not our function to reverse jury verdicts merely because some error occurred in the course of a civil trial. Errors that are harmless or do not affect the substantial rights of the parties do not require reversal." *Jennings v. Smith*, 165 W.Va. 791, 795, 272 S.E.2d 229, 231 (1980).[24]

## IV.

## CONCLUSION

We affirm the circuit court's denial of the Inn's motion for a new trial.

Affirmed.

Justice ALBRIGHT not participating.

Senior Status Justice McHUGH, sitting by temporary assignment.

---

21. To be clear, Mr. Reed's report was prepared prior to the September 8, 2003, alteration of the location of Route 50. Further, as evidenced below, Mr. Reed's report actually supported DOH's position that the road construction project did not have a negative impact on the Inn's hotel.

Q. Okay. Mr. Reed, in your report, did you discuss the current reconstruction of Corridor D that was ongoing in October of 2002 when you did your report?

A. I discussed it, yes, that it was being developed.

Q. Okay. As a matter of fact, did you state—I'm looking at page 16 of your report. Did you state:

"The primary objective of the Corridor D project is to stimulate economic development around the greater Parkersburg/Belpre area. The increased access and mobility will help the area achieve its full development potential by attracting new investment corporation."

"The area's close proximity to major markets such as Columbus, Ohio and Pittsburgh, Pennsylvania will also help attract both industrial and commercial development. According to the recent studies, one of the greatest deterrents to growth in the study area was the lack of highway infrastructure. The project will also help alleviate increased congestion along Route 50 by providing an alternate route for commuters and travelers."

A. Yes, I did.

22. Mr. Reed admitted during the trial that he prepared the report "for the purpose of Wesbanco being able to figure out whether they ought [to] loan the Holiday Inn $2 million[.]"

23. During his testimony at trial Mr. Reed made clear that his report did not assess the negative impact of re-routing the location of Route 50 on the Inn's hotel:

Q. Okay. Are you telling us you didn't have enough information to know how the new road would impact the Holiday Inn.

A. No, I did not.

. . . .

Q. There is nowhere in this report where you discuss any negative effects that Corridor D could have on the Holiday Inn, is there?

A. I didn't realize it at the time. I didn't know what kind of access they were going to have. They were talking about some type of access, but that was—didn't happen.

24. The Inn also argued that the trial court committed error in excluding evidence of the appraisal value of its property in 1987 and 1994. Insofar as this evidence went to the issue of damages, we also find that, to the extent there was error in excluding the evidence, it was harmless. The jury found that relocating Route 50, and the road construction project in general, did not cause any loss in business to the Inn. Consequently, knowledge by the jury of the appraisal value of the property in 1987 and 1994 could not have affected the outcome in the case. *See Keesee v. General Refuse Serv., Inc.*, 216 W.Va. 199, 207, 604 S.E.2d 449, 457 (2004) ("[T]he error was harmless because the jury did not reach the damage issue as it had disposed of the case against the plaintiff on the liability issue."); *McDougal v. McCammon*, 193 W.Va. 229, 239, 455 S.E.2d 788, 798 (1995) ("[T]his Court has consistently held that where the plaintiff does not prevail as to liability, errors affecting damages are harmless[.]"); *Ratlief v. Yokum*, 167 W.Va. 779, 788, 280 S.E.2d 584, 590 (1981) ("The reason the error is harmless in this case is that the jury did not reach the damage issue but disposed of the case against the plaintiff on the liability issue.").

Senior Status Justice McHUGH disqualified.

Judge BEANE, sitting by temporary assignment.