**IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

**September 2013 Term**

**FILED**

**October 21, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**No. 12-0638**

**LEE TRACE LLC,**
**Petitioner**

**V.**

**GEARL RAYNES, ASSESSOR FOR BERKELEY COUNTY, WEST VIRGINIA, BERKELEY COUNTY COUNCIL SITTING AS BOARD OF REVIEW AND EQUALIZATION, AND BERKELEY COUNTY COUNCIL,**
**Respondents**

**No. 12-0992**

**LEE TRACE LLC,**
**Petitioner**

**V.**

**GEARL RAYNES, ASSESSOR FOR BERKELEY COUNTY, WEST VIRGINIA, BERKELEY COUNTY COUNCIL SITTING AS BOARD OF REVIEW AND EQUALIZATION, AND BERKELEY COUNTY COUNCIL,**
**Respondents**

_____

**Appeal from the Circuit Court of Berkeley County**
**Honorable Christopher C. Wilkes, Judge**
**Case No.:   11-AA-2**

**REVERSED AND REMANDED**
_____

**Submitted: September 4, 2013**
**Filed: October 21, 2013**

**Thomas Moore Lawson, Esq.**
**Lawson and Silek, P.L.C.**
**Winchester, Virginia**
**Attorney for Petitioner**

**Michael D. Thompson, Esq.**
**Thompson & Pardo, PLLC**
**Charles Town, West Virginia**
**Attorney for Respondent Assessor**
**Gearl Raynes**

**Norwood Bentley, Esq.**
**Martinsburg, West Virginia**
**Attorney for Respondent Council and**
**Board of Review and Equalization**

**The Opinion of the Court was delivered PER CURIAM.**

**JUSTICE KETCHUM concurs and dissents and reserves the right to file a separate opinion.**

**SYLLABUS BY THE COURT**

1.      " 'This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*.' Syllabus Point 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996)." Syllabus Point 1, *In re: Tax Assessment of Foster Foundation's Woodlands Retirement Community*, 223 W.Va. 14, 672 S.E.2d 150 (2008).

2.      " 'An assessment made by a board of review and equalization and approved by the circuit court will not be reversed when supported by substantial evidence unless plainly wrong.' Syllabus Point 1, *West Penn Power Co. v. Board of Review and Equalization*, 112 W.Va. 442, 164 S.E. 862 (1932) (other internal citations omitted).' Syllabus Point 3, *In re: Tax Assessment of Foster Foundation's Woodlands Retirement Community*, 223 W.Va. 14, 672 S.E.2d 150 (2008)." Syllabus Point 2, *Mountain America, LLC v. Huffman*, 224 W. Va. 669, 687 S.E.2d 768 (2009).

3.      "Title 110, Series 1P of the West Virginia Code of State Rules confers upon the State Tax Commissioner discretion in choosing and applying the most accurate method of appraising commercial and industrial properties. The exercise of such discretion will not be disturbed upon judicial review absent a showing of abuse of discretion."

Syllabus Point 5, *In re Tax Assessment Against American Bituminous Power Partners, L.P.*, 208 W. Va. 250, 539 S.E.2d 757 (2000).

**PER CURIAM:**

These consolidated cases are before the Court upon two separate appeals of Lee Trace LLC, Petitioner, from a March 23, 2012, order of the Circuit Court of Berkeley County affirming the Board of Review and Equalization's determination that Lee Trace's challenge to the 2010 tax assessment for apartment property located at Hood Circle, Martinsburg, West Virginia, was not timely filed, and a July 24, 2012, order of the Circuit Court of Berkeley County granting, in part, and denying, in part, Lee Trace's petition for appeal of the Board of Review and Equalization's ruling setting the 2011 assessment value for the same property at $6,551,735.

In the first appeal, Lee Trace contends that the January 5, 2010, assessment letter did not inform it of its right to appeal the 2010 assessment as expressly required by W. Va. Code §11-3-2a. In the second appeal, which pertains to the 2011 assessment, Lee Trace contends that the circuit court erred in averaging the Assessor's "hybrid" income approach assessment with the 2010 cost approach assessment; 2) the circuit court erred in according a presumption of correctness to the Assessor when the Assessor admitted that she had not performed an assessment compliant with legislative rules; 3) the circuit court erred in finding that the Assessor was not required to consider an income approach to value; 4) the circuit court ignored evidence of the property's value submitted by Lee Trace and improperly relied on evidence that was not relevant to the property's value; and 5) the circuit court set an assessment that violated its equal protection rights. Upon reviewing

1

the petitions, the responses, the submitted appendices, and the arguments of counsel, this Court concludes that the circuit court's orders pertaining to both the 2010 and 2011 assessments should be reversed for the reasons set forth more fully below, and the cases remanded for further proceedings consistent with this Opinion.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

*A. No. 12-0638*

Lee Trace owns real property located at 15000 Hood Circle, Martinsburg, West Virginia 25403, consisting of approximately 17.02 acres. The instant appeal involves the 2010 real estate tax assessment of the property. In 2008, an apartment complex was constructed on the property. The property was appraised and assessed by the Berkeley County Assessor's Office as land only for the tax year 2009, as construction on the apartment complex was not yet complete as of the July 1, 2008, statutory assessment date. However, by July 1, 2009, the statutory assessment date for tax year 2010, construction of the apartment buildings and other structures was complete, and the assessed value of the property for tax year 2010 reflected a completed project. Lee Trace listed the face amount of fire insurance carried on the "Application for Review of Property Assessment" dated February 10, 2011, as $17,000,000.00. On the same document, Lee Trace declared the cost of construction of the apartment complex on the property to be $12,927,378.00. On January 5, 2010, the Assessor issued a Notice of Increase in

2

Assessment informing Lee Trace that the property had increased in value to $7,895,530.00

for the 2010 tax year.   The notice provided, in pertinent part, the following:

> Dear Taxpayer:
>
> In accordance with Chapter 11, Article 3, Section 2A of the West Virginia Code, I am herewith notifying you that your current property assessment for the forthcoming year is $7,895,530
>
> Your property assessment previously was $677,050
>
> The difference between current and previous is $7,218,480
>
> This represents an increase in the assessed value.
>
> . . .
>
> If you believe an adjustment in the assessed value is necessary, you should contact the County Commission sitting as a Board of Review and Equalization.

Lee Trace completed an "Application for Relief Based on Improper Notice Pursuant to West Virginia Code § 11-3-2a and for Relief from Clerical Errors Pursuant to West Virginia Code § 11-3-27" dated December 21, 2010.   It asserted that the notice it received was insufficient because it failed to advise Lee Trace, LLC of its right to appear and seek an adjustment, and that the Assessor committed clerical errors by using different standards for appraising similar area properties and by failing to use income information in the appraisal.

Counsel for Lee Trace appeared at the Berkeley County Council Meeting on February 3, 2011. The council subsequently advised Lee Trace's counsel, by letter dated February 24, 2011, that it found that the owner of Lee Trace, Robert Cocker, was given adequate notice for the filing of the review and equalization application, but Mr. Cocker failed to timely file his request. The letter stated that the council was without jurisdiction to consider the application, having adjourned *sine die* in February of 2010.

Lee Trace filed a petition for appeal with the Circuit Court of Berkeley County on March 18, 2011. On March 23, 2012, the circuit court entered its Order Substituting Party, Denying Part of the Petition, and Setting a Hearing. The circuit court opined that the notice was sufficient because W.Va. Code § 11-3-2a does not require that a particular date be given as a deadline, and because the notice referenced the appropriate code section, therein directing Lee Trace to the explanation of process. The circuit court reasoned that "[a]ll persons are presumed to know the law." *State v. McCoy*, 107 W.Va. 163, 172, 148 S.E. 127, 130 (1929). The circuit court also found that the time for challenging the assessment was not extended because of clerical mistake, because Lee Trace challenged the assessment based on the method used, not "an unintentional or inadvertent act" as described in W.Va. Code § 11-3-27. The circuit court found that Lee Trace did not challenge the assessment at the proper time, and had waived its right to seek correction. The circuit court affirmed the Board of Review and Equalization's ruling with respect to the 2010 assessment. Because Lee Trace had also challenged its 2011

4

assessment in the appeal to the circuit court, the court set a hearing to address the remaining issues. The circuit court entered an order on April 16, 2012, clarifying that its previous order regarding the 2010 assessment was a final order for purposes of appeal.[1]

*B. No. 12-0992*

For the 2011 tax year, the Assessor assessed the property at a value of $7,593,430.00 using a cost approach analysis to determine the value. Lee Trace filed an application for review of the 2011 assessment, which was received by the council on February 17, 2011, and attended a hearing with the Board of Review and Equalization on February 22, 2011. Lee Trace sought to adjust the 2011 assessment by using the income approach, thus reducing the tax assessed value of the property. Deputy Assessor Tamera Edgar (hereinafter referred to as "Ms. Edgar" or "the Assessor") confirmed at that hearing before the Board of Review and Equalization that some other apartment complexes in the area had assessments reduced by the Board upon consideration of income when taxpayers specifically requested it, but that the income approach was not used to assess Lee Trace's property because the data was not available to develop a "cap rate" used in the calculation due to the lack of any comparable sales in Berkeley County for the period in question. Thus, it was not possible for her to meet the specific requirements pertinent to performance of an income approach provided for in Legislative Rule § 110-1P-2.

---

[1] To the extent that Lee Trace appeals from the April 16, 2012 order as final and appealable, this is the order date that we will reference in the remainder of the Opinion.

At the hearing, the Board of Review and Equalization asked the Assessor to provide it with a value that took into account the income of the property. Lee Trace provided additional income information for 2010 to the Assessor on the day following the hearing, and the Assessor then completed a revised assessment which utilized realty rates to determine a capitalization rate in lieu of unavailable market data, and also utilized actual rent of the property in lieu of economic rent. This "hybrid" income approach provided a value of $5,207,940.00 based upon her income approach. By letter dated February 24, 2011, the Berkeley County Council, sitting as the Board of Review and Equalization, ordered:

> After due consideration of the presentation of the applicant and the documents offered and of the presentation of the [a]ssessor, the [c]ouncil finds that the [a]ssessor's original assessment of the value of the property was $7,593,430, based upon a cost of construction approach, for this new property; that, the owner has requested an income approach compared to the cost comparison of the property, yielding an assessment of $5,207,940; that the [c]ouncil further finds that, a fair value is reached by averaging the value by income approach and the value by cost approach; that the fair total assessed value is $6,400,690.
>
> Accordingly, the [c]ouncil [o]rders that the assessed value of the property should be reduced to $6,400,690, all as based on the evidence presented and upon the recommendation of the [a]ssessor.

Lee Trace appealed this order to the Circuit Court of Berkeley County alleging that the Board of Review and Equalization's consideration of a "hybrid" income

6

approach subsequently offered by the Assessor was improper, and that the Board's averaging of the cost approach and "hybrid" income approach was improper. There was an insufficient record from the Board of Review and Equalization's deliberations and the hearing held with regard to Lee Trace's request for an adjustment to the assessment. There was no explanation on the record of how the Assessor arrived at the value derived from the cost approach or the value derived from the "hybrid" income approach. The circuit court permitted discovery to supplement the record.

In the course of discovery, Ms. Edgar testified that she utilized the income approach for properties only when taxpayers asked her to do so. Regarding Lee Trace, specifically, she said, "Well, I did the cost approach. The market data was considered but not done, because there were no sales. And I did the income approach. . . . We did an income—when we received the information for Lee Trace, it was after the fact. But it was done." Lee Trace did not provide the Assessor's office with income information until late in January, 2011, and then, only two of the three years required by the Legislative Rule. Ms. Edgar testified that she had rental information—but not occupancy rate information—about Lee Trace at the time she performed her appraisal but, "I just felt that being new construction, that I wanted to put more weight on that."[2]

---

2 Counsel had appeared on behalf of Lee Trace at an earlier council meeting on February 3, 2011. At that hearing, Ms. Edgar told the council that she had met with Lee Trace's counsel in March of 2010, and told him at that time that she would be happy to do an income assessment on the property if he would come to see her in January of 2011. She

7

Ms. Edgar testified that when she performed the income approach appraisals, the appraisals were lowered. However, she acknowledged that she did not recall an open market sale of an apartment complex in the area in recent years, and when developing the capitalization rate for the income approach, she used "Realty Rates" for the D.C. metropolitan area in place of the current selling price of comparable properties. Specifically, she testified,

> Q (by counsel for Lee Trace): All right. When you did the income based appraisals only after people asked for them, is this the way you used that information where it says by dividing annual net income by the current selling price of comparable properties? Is that the method that you have used historically when you did an income based appraisal?
>
> A: That's not how I derived the cap rate.
>
> Q: All right. How did you develop a cap rate?
>
> A: We mentioned this before. I used Realty Rates.
>
> Q: All right. Do you understand the difference between what you did using Realty Rates out of a book for different market areas as opposed to what's set forth here in the statute?

---

informed council that, as of the February 3, 2011, meeting, she had not received all of the necessary documentation from Lee Trace. By letter dated February 24, 2011, the county council advised Lee Trace, LLC that the council had no jurisdiction to consider an application, dated December 21, 2010, related to the 2010 assessment, because the Board of Review and Equalization had adjourned *sine die* in February of 2010. Ms. Edgar also testified that this was the first year that the Board of Review and Equalization had averaged two different approaches to achieve the final assessment. She testified that it was done for "at least two" taxpayers.

8

A: I understand that. But if you do not have a sale of an apartment complex during that year, you're not going to be able to develop a cap rate using this method. You can't do it if you don't have the information.

Q: All right. So – and each time when you did the income based appraisal after people had asked you to do it, you did look to see if there was a sale and then determined that there was not. Therefore, you could not follow the instruction of the statute.

A: To my knowledge, I have not had an open market sale of apartment complexes recently in this county.

Also in the course of discovery, the Assessor filed on January 6, 2012, a "Supplement to Record" in the form of a report of appraisal performed by Rolston & Company. This report attached a market value of $10,950,000 to the property, after taking an average of Rolston's own cost approach and income approach figures. That appraiser wrote that "[t]he [s]ales [c]omparison [a]pproach could not be developed since there were no sales in the area which were comparable to the subject." He went on, "The [i]ncome [a]pproach was based on the actual income and actual and projected expenses and is felt to be the best indicator of value. However, the [c]ost [a]pproach needs to be considered and was given equal weight to the determination of value."

Lee Trace then filed on April 17, 2012, a motion to supplement the administrative record with a report of appraisal prepared by L. Steven Noble. Mr. Noble proposed values of $8,040,000 (cost approach); $6,700,000 (income capitalization

9

approach) and $8,200,000 (sales comparison approach). He wrote:

> The value conclusion is $6,630,500, heavily weighted by the [i]ncome [a]pproach, which for the Martinsburg, Berkeley County markets is appropriate. For apartment properties, the [s]ales [c]omparison [a]pproach is usually given more weight. However, the property has not reached stabilization and a large adjustment was warranted for that characteristic. Furthermore, there are no recent comparable sales of land or apartments in the local market. And, although the [c]ost [a]pproach suffers from various forms of depreciation, they are market-derived deductions. For this non-stabilized apartment property, the [i]ncome [a]pproach is weighted heavily in the analysis.

On July 24, 2012, the circuit court entered a final order granting, in part, and denying, in part, the petition for appeal. The court found that the Assessor's use of the cost approach was within her discretion, that the Board of Review and Equalization had discretion to request an income estimate and average the two values, and that the Board has the authority to equalize assessments by increasing or decreasing the value. The court found, however, that the Board acted arbitrarily because the final value at which the Board arrived—$6,400,690—is not an accurate average of the income-derived and cost-derived values. The court wrote:

> Under this unique situation, the Court finds [it] best, legally and equitably, to set the value at the actual average.
>
> The [c]ourt notes a couple of the major factors in the record that support this value. Lee Trace is a complex either significantly newer (or more recently built) or significantly larger than any of the comparable complexes. So, this value, slightly higher, than possibly others, would be proper. Also, the value for the purposes of fire insurance is set at $17,000,000, which would yield an assessment of 10,200,000

10

(60%)—significantly above the value determined by the Assessor and the Board.

On the other hand, Petitioner's appraisal is completed by someone not licensed to appraise property in West Virginia. This fact, along with the other evidence in the record, renders Petitioner's appraisal unpersuasive.

Most notably, the appraisal submitted by the [c]ounty, done by a licensed appraiser and done in a manner which considers a large number of factors and approaches, finds in the market value to be $10,950,000. This amount clearly supports the Board's attempt to average the two numbers, as 60% of the market value yields $6,570,000 (which is similar to what the mathematical average is).

So the [c]ourt finds that the Board's affixing of the number was arbitrary, and Petitioner has met the burden, to wit: "average" was not mathematically correct. Further the [c]ourt finds that substantial evidence, as well as equitable factors, support a mathematical average of the income approach and cost approach assessments.

Therefore, the most accurate way to fix this arbitrary number is to fix the math. A mathematical average appropriately considers all the factors and gives the due deference to the Board's statutory authority to equalize assessments.

Accordingly, the [c]ourt finds that the value supported by the evidence is the mathematical average of the cost and income approaches to the assessment, which is $6,551,735.

Following entry of the circuit court's orders pertaining to the 2010 and 2011 tax assessments, Lee Trace filed its Petitions for Appeal with this Court.

**II.**

11

**STANDARD OF REVIEW**

" 'This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*.' Syllabus Point 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996)." Syllabus Point 1, *Foster Found.*, 223 W.Va. 14, 672 S.E.2d 150 (2008).   This Court has repeatedly recognized that

> " '[a]n assessment made by a board of review and equalization and approved by the circuit court will not be reversed when supported by substantial evidence unless plainly wrong.' Syllabus Point 1, *West Penn Power Co. v. Board of Review and Equalization*, 112 W.Va. 442, 164 S.E. 862 (1932) (other internal citations omitted)." Syllabus Point 3, *In re: Tax Assessment of Foster Foundation's Woodlands Retirement Community*, 223 W.Va. 14, 672 S.E.2d 150 (2008)."

Syllabus Point 2, *Mountain America LLC v. Huffman*, 224 W. Va. 669, 687 S.E.2d 768. The interpretation of a statute, or the constitutionality of a statute, as written or as applied, as in this case, presents a purely legal question subject to *de novo* review. *Foster Found.*, 223 W. Va. at 18-19, 672 S.E.2d at 154-55 (citing *Appalachian Power Co. v. State Tax Dept. of West Virginia*, 195 W. Va. 573, 466 S.E.2d 424 (1995)); *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

**III.**

**DISCUSSION**

*A.  No. 12-0638*

12

As it pertains to the 2010 property tax assessment, Lee Trace alleges that the Assessor failed to provide it with adequate notice as required under W.Va. Code § 11-3-2a and constitutional due process. West Virginia Code § 11-3-2a (2008)[3] requires that the Assessor provide notice to property owners whose assessment has increased by more than ten percent from the prior year. That statute provides, in pertinent part,

> (a) If the assessor determines the assessed valuation of any item of real property is more than ten percent greater than the valuation assessed for that item in the last tax year, the increase is one thousand dollars or more and the increase is entered in the property books as provided in section nineteen of this article, the assessor shall give notice of the increase to the person assessed or the person controlling the property as provided in section two of this article. The notice shall be given at least fifteen days prior to the first meeting in February at which the county commission meets as the board of equalization and review for that tax year and advise the person assessed or the person controlling the property of his or her right to appear and seek an adjustment in the assessment. The notice shall be made by first-class United States postage mailed to the address of the person assessed or the person controlling the property for payment of tax on the item in the previous year, unless there was a general increase of the entire valuation in any one or more districts in which case the notice shall be by publication of the notice by a Class II-0 legal advertisement in compliance with the provisions of article three, chapter fifty-nine of this code. The area for the publication is the county.

W. Va. Code § 11-3-2a.

---

3 Although W. Va. Code § 11-3-2a was amended in June 2010, the 2008 version of W. Va. Code § 11-3-2a is applicable in this case insofar as the notice at issue was dated January 5, 2010.

13

The concluding paragraph of the January 5, 2010, notice provided to Lee Trace stated, "If you believe an adjustment in the assessed value is necessary, you should contact the county commission sitting as a Board of Review and Equalization." Lee Trace asserts that the notice did not advise it of its right to appear or of the February 25, 2010, deadline, and because it was unaware of a deadline, it did not contact the Assessor or the Board until March of 2010. Lee Trace alleges that, "Even if there were no specific statutory requirement of notice, this principle [that administrative agencies observe basic rules of fairness] would seem to require that adequate notice and opportunity to be heard be afforded. . . ." *Mizell v. Rutledge*, 174 W.Va. 639, 641, 328 S.E.2d 514, 516 (1985). Also, "constitutional due process includes being informed of the possible consequences of government action." *Id.* Lee Trace contends that a plain reading of the notice reveals that it did not conform to the statute. *See* W. Va. Code § 11-3-2a.

Conversely, the Respondents contend that a review of W.Va. Code § 11-3-2a shows that the notice dated January 15, 2010, conveyed the exact wording required by statute. Respondents argue that "[a]ll persons are presumed to know the law." *State v. McCoy*, 107 W.Va. at 172, 148 S.E. at 130. They argue that W.Va. Code § 11-3-24 clearly indicates that the county council will meet annually, not later than February 1st of the tax year and adjourn *sine die* no later than the last day of February of the tax year. That code section also explains that anyone who fails to seek relief at that meeting has waived his right to ask for a correction of his assessment in that particular tax year. Additionally, the

14

Berkeley County Council asserts that it is not always possible for the Assessor to know the sessim dates for the Board of Review and Equalization, but a person can contact the Assessor and/or the council office, as provided in the notice, for details. "The law in prescribing the time when such complaints will be heard, gives all the notice required . . . ." *Hagar v. Reclamation Dist. No. 108*, 111 U.S. 701, 710, 4 S. Ct. 663, 668 (1884). Furthermore, the Respondents maintain that statutes establishing administrative procedures for the collection and assessment of taxes are to be construed in favor of the government. *Mountain America LLC v. Huffman*, 224 W.Va. at 683, 687 S.E.2d at 782 (finding W.Va. Code § 11-3-24 facially constitutional and constitutional as to that case) (citing Syl. Pt. 1, *Calhoun County Assessor v. Consolidated Gas Supply Corp.*, 178 W.Va. 230, 358 S.E.2d 791 (1987)).

Upon review of the notice at issue in this case, we find that it does not comport with the requirements established in W. Va. Code §11-3-2a, as it fails to adequately inform the person assessed or the person controlling the property of his or her "right to appear" and seek an adjustment in the assessment. Because W. Va. Code §11-3-2a does not expressly specify what information constitutes proper notice of the "right to appear," this Court must necessarily decide this issue.

Here, the parties dispute whether the Assessor is required to provide dates of sessions for the Board of Review and Equalization in order to put the taxpayer on notice of

15

the time frame for appeal. We believe that in order for Lee Trace to properly be advised of its right to appear under §11-3-2a, the notice at issue should have specified the place and time by which Lee Trace could object to the proposed increase in the valuation of the property.[4]

The notice at issue here simply advised Lee Trace that "[i]f you believe an adjustment in the assessed value is necessary, you should contact the county commission sitting as a Board of Review and Equalization." No mention was made of the taxpayer's right to appear by a specified time or at a specific place, and no explanation was provided regarding the role the county commission served in the tax assessment appeals process. As a matter of due process, the taxpayer should be sufficiently alerted of his or her appeal rights, and we find that the notice at issue in this case is insufficient on these grounds. Indeed, the requirement for the government to properly advise persons of their appeal rights is founded in principles of statutory and constitutional due process. *Mizell*, 174 W. Va. at 643, 328 S.E.2d at 518; *see also Chavis v. Heckler*, 577 F.Supp. 201, 205 (D.C.D.C.

---

[4] It is helpful to our analysis that the currently enacted version of W. Va. Code §11-3-24, effective June 11, 2010, expressly anticipates that the taxpayer is given notice of the time and place that the Board of Review and Equalization is in session in order to object to the proposed increase in the valuation of the taxpayer's property. West Virginia Code §11-3-24(f) provides, in pertinent part, "[a]ny person who receives notice as provided in subsection (e) of this section may appear before the board at the *time and place specified in the notice* to object to the proposed increase in the valuation of the taxpayer's property. . ." (emphasis added). Although the notice at issue before us was dated January 5, 2010, six months prior to this version of the code being enacted, it is useful for purposes of determining what information constitutes proper notice of the right to appear.

16

1983) (finding that failure to advise of right to appeal in social security case violates procedural due process). In addition to these constitutional principles, this Court has recognized that statutory notice provisions, such as in the instant case, require that a taxpayer be informed of the specific consequences of an assessor's determination in order to make an informed decision concerning appeal. *Mizell,* 174 W. Va. at 643, 328 S.E.2d at 518 (*citing In re Tax Assessments Against Pocahontas Land Corp.*, 158 W. Va. 229, 210 S.E.2d 641 (1974)). Accordingly, we reverse the circuit court's April 16, 2012, order finding that Lee Trace's appeal of the 2010 tax assessment was untimely.[5]

### B. No. 12-0992

In the second appeal, Lee Trace alleges that the circuit court ruling was clearly erroneous for the following reasons: 1) the circuit court erred in averaging the Assessor's "hybrid" income approach assessment with the 2010 cost approach assessment; 2) the circuit court erred in according a presumption of correctness to the Assessor when the Assessor admitted that she had not performed an assessment compliant with legislative rules; 3) the circuit court erred in finding that the Assessor was not required to consider an income approach to value; 4) the circuit court ignored evidence of the property's value submitted by Lee Trace and improperly relied on evidence that was

---

[5] To the extent that we reverse the circuit court's ruling on these grounds, it is not necessary for this Court to address Lee Trace's remaining argument pertaining to the 2010 tax assessment -- whether there was an inadvertent mistake or clerical error under W. Va. Code §11-3-27.

17

not relevant to the property's value; and 5) the circuit court set an assessment violating its equal protection rights.

When valuing property for ad valorem taxation purposes, the property is required to be valued at its true and actual value. As this Court has stated,

> [t]ax assessments of property are required to be proportionate to the property's value: "[A]ll property, both real and personal, shall be taxed in proportion to its value to be ascertained as directed by law." W. Va. Const. art. X, § 1. W. Va. Code § 11–3–1 (1977) (Repl. Vol. 2008) further instructs that "[a]ll property shall be assessed annually ... at its true and actual value." We have interpreted the term "value" with respect to tax assessments as meaning " 'worth in money' of a piece of property-its market value." Syl. pt. 3, in part, *Killen v. Logan County Comm'n*, 170 W.Va. 602, 295 S.E.2d 689 [ (1982) ][, overruled on other grounds by *In re Tax Assessment of Foster Found.'s Woodlands Ret. Cmty.*, 223 W.Va. 14, 672 S.E.2d 150 (2008) ]. Furthermore, we have held that "[t]he price paid for property in an arm's length transaction, while not conclusive, is relevant evidence of its true and actual value." Syl. pt. 2, in part, *Kline v. McCloud*, 174 W.Va. 369, 326 S.E.2d 715 (1984).

*Foster Found.*, 223 W.Va. at 33, 672 S.E.2d at 169.

The West Virginia Code of State Rules § 110-1P-2.2.1 (1991) recognizes three different appraisal methods for determining the fair market value of "commercial and industrial real and personal property for ad valorem tax purposes." This subsection provides: ". . . the Tax Commissioner will consider and use, where applicable, three

18

generally accepted approaches to value: (A) cost,[6] (B) income,[7] and (C) market data.[8]" W.

Va. C.S.R. § 110-1P-2.2.1. Additionally, appraisals must consider a variety of other

factors. *See* W. Va. C.S.R. § 110-1P-2.1.1 (1991) and W. Va. C.S.R. § 110-1P-2.1.3

(1991). This series of regulations provides that each of the enumerated factors should be

considered, but "some . . . may be given more weight than others." W. Va. C.S.R. §

110-1P-2.1.4 (1991).

In the case before us, Lee Trace is not arguing that the Assessor failed to

consider all of the factors under the cost approach analysis, but rather that the Assessor

violated the law in this assessment by failing to consider the income approach. Lee Trace

also claims that the Board's reduction, based upon an estimate of what an income approach

---

[6] To determine fair market value under the cost approach, "replacement cost of the improvements is reduced by the amount of accrued depreciation and added to an estimated land value. In applying the cost approach, the Tax Commissioner will consider three types of depreciation: physical deterioration, functional obsolescence, and economic obsolescence." W. Va. C.S.R. § 110-1P-2.2.1.1 (1991).

[7] In determining the income approach, "[a] property's present worth is directly related to its ability to produce an income over the life of the property. The selection of an overall capitalization rate will be derived from current available market data by dividing annual net income by the current selling price of comparable properties. The present fair market value of the property shall then be determined by dividing the annual economic rent by the capitalization rate." W. Va. C.S.R. § 110-1P-2.2.1.2 (1991). Under this type of valuation, economic rent means "the rental amount which a space or property would attain in the open market at the time of appraisal, whether it is lower, higher or the same as the actual contract rent." W. Va. C.S.R. § 110-1P-2.3.6 (1991).

[8] The market data approach will be applied by "considering the comparable selling price of comparable properties." W. Va. Code § 110-1P-2.2.1.3 (1991).

19

would result in, contravened the regulations.

Conversely, the Respondents assert that the Assessor did not have a database from apartment complex owners for income approach comparison, and she did not have sales of apartment complex owners to develop a capitalization rate for an income approach appraisal as required by W.Va. C.S.R. § 110-1P-2.2.1.2. Lee Trace had not provided any income or operating statement for its property for 2010 at the time she performed the initial assessment of the property. The Assessor had to give the Board of Review and Equalization a completed property book by February 2011, and Lee Trace did not give the Assessor timely information. The income approach appraisal was not completed in the normal course of the Assessor's duties, but at the Board's request.

Respondents further allege that having invited the Board to consider an income approach appraisal of its property as had been performed in a similar fashion for other apartment complex properties in past years, Lee Trace should not now be complaining that the Board and circuit court erred in using the assessed value derived by this income approach method. *See* Syl. Pt. 6, *Page v. Columbia Natural Resources, Inc.,* 198 W.Va. 378, 480 S.E.2d 817 (1996) (stating "[a] litigant may not silently acquiesce to an alleged error, or actively contribute to such error, and then raise that error as a reason for reversal on appeal."). They aver that if Lee Trace disagreed with the methodology, it should have informed the Board of its disagreement or produced its own income approach

20

appraisal to the Board during the February 2011 session.

Title 110, Series 1P of the West Virginia Code of State Rules is clearly intended by its language to give the Assessor discretion in choosing the method for valuation. In syllabus point 5 of *In re Tax Assessment Against American Bituminous Power Partners, L.P.*, 208 W. Va. 250, 539 S.E.2d 757 (2000), this Court held that "Title 110, Series 1P of the West Virginia Code of State Rules confers upon the State Tax Commissioner discretion in choosing and applying the most accurate method of appraising commercial and industrial properties. The exercise of such discretion will not be disturbed upon judicial review absent a showing of abuse of discretion."; *see also* Syl. Pt. 4, *Stone Brooke Ltd. Partnership v. Sisinni*, 224 W. Va. 691, 688 S.E.2d 300 (2009). West Virginia C.S.R. § 110-1P.-2.2.2 embodies this intent found throughout the statutes and rules, and states in pertinent part,

> [w]hen possible, the most accurate form of appraisal should be used, but because of the difficulty in obtaining necessary data from the taxpayer, or due to the lack of comparable commercial and/or industrial properties, choice between the alternative appraisal methods may be limited.

This Court has recognized that "the Tax Commissioner has permitted an Assessor to select any one of these three methods by which to value commercial real property for ad valorem taxation purposes, with a preference not for any one particular method but only for 'the most accurate form of appraisal.' W. Va. C.S.R. § 110–1P–2.2.2."

21

*Sisinni*, 224 W. Va. at 700, 688 S.E.2d at 309.

Here, the circuit court properly concluded that an assessor need not perform a useless act of considering an appraisal method where the assessor does not have sufficient data to perform that appraisal method. Lee Trace did not deliver all of its 2010 expense and income information to the Board until mid-February of 2011. Additionally, the data was not available for the Assessor to develop a "cap rate" used in the calculation due to the lack of any comparable sales in Berkeley County for the period in question. Thus, the Assessor's choice was limited. *See also Bayer MaterialScience, LLC v. State Tax Comm'r*, 223 W.Va. 38, 54, 672 S.E.2d 174, 190 (2008) (rejecting taxpayers' request to apply particular appraisal method where taxpayers had not provided data necessary to apply that appraisal method because taxpayers' corporate financial structure did not produce that type of data). Accordingly, we find that the circuit court did not commit error in ruling that the Assessor's choice of the cost approach was within her discretion under the plain language of the legislative rules and the authority of this Court.

We do, however, take issue with the circuit court's affirmation of the Board's reduction in value based upon an estimate averaging the cost approach value initially used by the Assessor with a "hybrid" income approach analysis subsequently performed by the Assessor at the request of the Board. Specifically, we find that it was an abuse of discretion for the Board to utilize a "hybrid" income approach value that did not comport

22

with the requirements of W. Va. Code of State Rules § 110-1P-2.2.1.2 and § 110-1P-2.3.6.[9]

The record reveals that the Assessor testified in her deposition that she could not develop a capitalization rate to do an income approach as required by W. Va. Code of State Rules § 110-1P-2.2.1.2 ". . . by dividing annual net income by the current selling price of comparable properties . . ." because ". . .if you do not have a sale of an apartment complex during that year, you're not going to be able to develop a cap rate using this method. You can't do it if you don't have the information." The Assessor pointed out " . . . to my knowledge, I have not had an open market sale of apartment complexes recently in this county." She also testified that in attempting to perform an income analysis, annual actual rent for the property was used instead of annual economic rent. West Virginia Code of State Rules § 110-1P-2.2.1.2 requires that "the present fair market value of the property shall then be determined by dividing the annual economic rent by the capitalization rate." Therefore, we find that the Board of Review and Equalization's use of the $6,400,690.00 assessed value utilizing this "hybrid" income approach in its methodology was plainly wrong as a matter of law, and the circuit court erred in affirming the Board's use of the "hybrid" income approach. "An assessment made by a Board of Review and Equalization and approved by the circuit court will not be reversed when supported by substantial evidence unless plainly wrong." Syl. Pt. 2, *Mountain America,*

---

[9] The requirements of W. Va. C.S.R. § 110-1P-2.2.1.2 and § 110-1P-2.3.6 are set forth more fully above. *See* footnote 7, *supra.*

23

*LLC v. Huffman*, 224 W. Va. 669, 687 S.E.2d 768 (2009) (citing Syl. Pt. 1, *West Penn Power Co. v. Board of Review and Equalization*, 112 W. Va. 442, 164 S.E. 862 (1932)).

Although we determine that the Board of Review and Equalization's methodology was plainly wrong, the fact remains that Lee Trace has presented no evidence that the methodology used by the Assessor in her initial cost approach assessment of $7,593,430.00 was erroneous. Rather, it has appealed the 2011 assessment alleging that a proper income approach should have been used by the Assessor instead. As we stated above, we believe the Assessor was within her discretion to utilize the cost approach method to appraise and assess the property. Once an Assessor has selected an appraisal method and applied it to appraise and assess a parcel of commercial real property,

> the valuation placed upon the property by the assessor is accorded great deference and is presumed to be correct. "As a general rule, there is a presumption that valuations for taxation purposes fixed by an assessor are correct.... The burden is on the taxpayer challenging the assessment to demonstrate by clear and convincing evidence that the tax assessment is erroneous." Syl. pt. 2, in part, *Western Pocahontas Props., Ltd. v. County Comm'n of Wetzel County*, 189 W.Va. 322, 431 S.E.2d 661. *Accord* Syl. pt. 7, *In re Tax Assessments Against Pocahontas Land Co.*, 172 W.Va. 53, 303 S.E.2d 691 ("It is a general rule that valuations for taxation purposes fixed by an assessing officer are presumed to be correct. The burden of showing an assessment to be erroneous is, of course, upon the taxpayer, and proof of such fact must be clear."). Cf. Syl. pt. 2, *In re Tax Assessments Against the S. Land Co.*, 143 W.Va. 152, 100 S.E.2d 555 (1957) ("In a case involving the assessment of property for taxation purposes, which does not involve the violation of a statute governing the assessment of property, or a violation of a constitutional provision, or in

24

> which a question of the constitutionality of a statute is not involved, this Court will not set aside or disturb an assessment made by an assessor or the county court, acting as a board of equalization and review, where the assessment is supported by substantial evidence."), overruled on other grounds by *In re the Assessment of Shares of Stock of the Kanawha Valley Bank*, 144 W.Va. 346, 109 S.E.2d 649 (1959).

*Foster Found.*, 223 W. Va. at 33–34, 672 S.E.2d at 169–70. We find that the cost approach assessment performed by the Assessor is supported by substantial evidence in the record. Lee Trace has not raised any error with respect to the methodology used by the Assessor in performing the cost approach analysis. Thus, we find that Lee Trace has not met the requisite burden of establishing by clear and convincing evidence that the Assessor's cost approach assessment was erroneous. Therefore, we accord the 2011 assessment made by the Assessor due deference and find that the 2011 tax assessment for the property at issue should be adjusted to reflect the Assessor's initial cost approach assessment value of $7,593,430.00.[10]

## IV.

## CONCLUSION

For the above stated reasons, we reverse the April 16, 2012, order and the July 24, 2012, order of the Circuit Court of Berkeley County and remand these matters to the circuit court for further proceedings consistent with this Opinion.

---

10 Because we reverse the circuit court's order on the grounds stated above, it is not necessary to address Lee Trace's remaining assignments of error.

25

Reversed and Remanded.