# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**January 2019 Term**

_____

No. 18-0019

_____

**FILED**

**March 19, 2019**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**PENN VIRGINIA OPERATING CO., LLC,**
Petitioner Below, Petitioner

v.

**PHYLLIS K. YOKUM, ASSESSOR OF RANDOLPH COUNTY;
DALE W. STEAGER, STATE TAX COMMISSIONER
OF WEST VIRGINIA; BARRY L. COOK, DIRECTOR,
STATE FORESTRY, DIVISION OF FORESTRY;
JOHN M. CUTRIGHT, ASSESSOR OF BARBOUR COUNTY;
and DUSTIN ZICKEFOOSE, ASSESSOR OF UPSHUR COUNTY,**
Respondents Below, Respondents

_____

**Consolidated Appeal from the Circuit Court of Randolph County
The Honorable David H. Wilmoth, Judge
Civil Action Nos. 16-C-33 - Randolph County,
16-AA-2 - Barbour County, 16-C-15 - Upshur County**

**REVERSED AND REMANDED**

_____

**Submitted: February 12, 2019
Filed: March 19, 2019**

Don C. A. Parker, Esq.
Alexander Macia, Esq.
James C. Walls, III, Esq.
Spilman Thomas & Battle, PLLC
Charleston, West Virginia
Counsel for Penn Virginia
Operating Co., LLC

Patrick Morrisey, Esq.
Attorney General
Charleston, West Virginia
Jane Charnock, Esq.
Assistant Attorney General
South Charleston, West Virginia
Counsel for the Division of Forestry

Patrick Morrisey, Esq.
Attorney General
Charleston, West Virginia
L. Wayne Williams, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for the State Tax
Commissioner and Assessors
of Barbour and Upshur Counties

Webster J. Arceneaux, III, Esq.
Lori D. Counts-Smith, Esq.
A. Garner Marks, Esq.
Lewis Glasser PLLC
Charleston, West Virginia
Counsel for the Assessor
of Randolph County

**JUSTICE ARMSTEAD delivered the Opinion of the Court.**

ii

**SYLLABUS BY THE COURT**

1. The West Virginia Division of Forestry has the exclusive authority to classify forest lands as managed timberland under this State's Managed Timberland Program.

2. "Procedures and rules properly promulgated by an administrative agency with authority to enforce a law will be upheld as long as they are reasonable and do not enlarge, amend or repeal substantive rights created by statute." Syl. pt. 4, *State ex rel. Callaghan v. West Virginia Civil Service Commission*, 166 W.Va. 117, 273 S.E.2d 72 (1980).

3. Pursuant to W.Va. C.S.R. § 110-1H-13.3, a property owner whose managed timberland application has been denied may, on or before November 1 of the assessment year, file an appeal of the denial with the Director of the West Virginia Division of Forestry.

**Armstead, Justice**:

This appeal concerns the distinction between the ordinary taxation of timberland by the State of West Virginia and the taxation at a lower appraised value of timberland subject to a cooperative contract with the State Division of Forestry pursuant to the Division's Managed Timberland Program.

The petitioner, Penn Virginia Operating Co., LLC ("Penn"), appeals from the December 6, 2017, consolidated order of the Circuit Courts of Randolph, Barbour and Upshur Counties. Pursuant to the order, the Tax Commissioner's determination was upheld that Penn's forest properties were not eligible for lower valuation for Tax Year 2016. The basis of the order was that Penn filed its application with the Division of Forestry for certification of its properties as managed timberland sixteen days after the September 1, 2015, deadline. Consequently, Penn's tax liability for Tax Year 2016 substantially increased.

This Court concludes that Penn was deprived of its right to an administrative appeal of the denial of its application due to incorrect information Penn received from the Division of Forestry ("Forestry"). Pursuant to W.Va. C.S.R. § 110-1H-13.3 [1999], Penn could have appealed the denial to Forestry's Director but was advised otherwise.

1

Consequently, the December 6, 2017, consolidated order is reversed, and this case is remanded with directions allowing Penn to appeal the denial of its application to the Director of the Division of Forestry. Penn's assertions, that the September 1 deadline is not to be strictly enforced and that Penn's forest properties were entitled to certification as managed timberland for Tax Year 2016, are more appropriately to be made before the Director of the Division of Forestry ("Director").

## I. Factual and Procedural Background

### A. The Managed Timberland Program

The Managed Timberland Program finds its source in Article VI § 53 of the Constitution of West Virginia. That section authorizes the Legislature to classify forest lands and provide for cooperation, by contract, between the State and property owners for the "planting, cultivation, protection and harvesting" of forest lands in West Virginia. Section 53 further states that forest lands embraced by the contract may be exempted from taxation or taxed in a manner as the Legislature may from time to time provide.

Derivative of Article VI § 53 is *W.Va. Code*, 11-1C-11(a) [1998], which sets forth the legislative declaration regarding managed timberland:

> The Legislature finds and declares that the public welfare is enhanced by encouraging and sustaining the abundance of high quality forest land within the State; that economic pressures may force industrial, residential or other land development inconsistent with sustaining the forests; and that tax policy should provide an incentive for private owners of forest land to

preserve the character and use of land as forest land and to make management decisions which enhance the quality of the future forest.

Section (b)(1) of *W.Va. Code*, 11-1C-11 [1998], states that forest land certified and managed under a cooperative contract with Forestry shall be valued as managed timberland for State tax purposes. Thus, pursuant to *W.Va. Code*, 11-1C-11b(b) and(d) [1998], timberland that is not certified as managed timberland shall be valued at its market value, whereas the value of an acre of managed timberland "shall always be less than the value of an acre of timberland of comparable soil quality in the county that is not certified as managed timberland." Subsection (e) of *W.Va. Code*, 11-1C-11b [1998], provides that any person aggrieved by any *valuation* of timberland may file a written objection to the valuation with the county assessor.

Especially relevant to the current matter is *W.Va. Code*, 11-1C-10(d)(1) [1994], which states in part:

> In order to qualify for identification as managed timberland for property tax purposes the owner must *annually certify*, in writing to the Division of Forestry, that the property meets the definition of managed timberland as set forth in this article and contracts to manage property according to a plan that will maintain the property as managed timberland.

(emphasis added) Although *W.Va. Code*, 11-1C-10(d)(1) [1994], does not provide an annual date by which an owner must apply for certification, the statute requires the Tax Commissioner to promulgate rules for certification as managed timberland. Nevertheless,

3

only Forestry can actually certify forest lands as managed timberland, and the Director of Forestry may revoke certification if an owner fails to comply with required forest management practices.

## B. The Administrative Proceedings

The legislative rules concerning timberland are found in Series 1H, entitled "Valuation of Timberland and Managed Timberland," of Title 110 pertaining to the Tax Commissioner. *See* W.Va. C.S.R. § 110-1H-1 [1999], *et seq*.

Penn owns 61,357.26 acres of timberland in West Virginia in Randolph, Barbour and Upshur Counties. Penn entered into a cooperative contract with Forestry in 2008, and its properties have been classified as managed timberland for ad valorem tax purposes from 2009 to the present, with the exception of Tax Year 2016.[1] While the character and use of Penn's properties have remained consistent with the Managed Timberland Program, its classification as managed properties for Tax Year 2016 was denied because the application was sixteen days late. As a result, Penn's tax liability for Tax Year 2016 increased by $523,554.98.

---

[1] Pursuant to W.Va. C.S.R. § 110-1H-4, for classification as managed timberland, the owner must enter into a contract with Forestry to use the property in "a planned program of multiple purpose forest management." *See* W.Va. C.S.R. § 110-1H-13 (also requiring the contract). Penn's 2008 contract reflected the provisions of W.Va. C.S.R. § 110-1H-4 and stated that Penn's properties "will be valued by the State Tax Commissioner according to the land's potential for growing timber instead of a generalized market value."

Penn's application for certification as managed timberland for Tax Year 2016 was filed on September 17, 2015, sixteen days after the September 1 deadline set forth in W.Va. C.S.R. § 110-1H-13. That Rule states that, annually, "on or before September 1, the owner shall file an application for certification as managed timberland with the Division of Forestry." Penn stated that the late filing was "due to an oversight." By letter dated September 21, 2015, from Forestry, Penn was informed that its application was untimely and that Penn's properties would not be certified as managed timberland for Tax Year 2016. The letter concluded: "Your only recourse is to file a grievance of valuation as per WV § 11-1C-11b(e)."

*W.Va. Code*, 11-1C-11b(e) [1998], cited in the letter, provides:

> Any person aggrieved by any valuation of timberland may file a written objection to the valuation with the county assessor on or before the fifteenth day of January of the assessment year. The written objection shall then be treated as a protest filed by the taxpayer under section twenty-four-a, article three of this chapter. If any person fails to exhaust the administrative and judicial remedies provided in said section, that person shall be barred from taking any further administrative or judicial action regarding the classification of the property for that assessment year.

Under referenced *W.Va. Code*, 11-3-24a [2010], the assessor may certify questions of classification or taxability to the Tax Commissioner for a ruling, review of which may be obtained in the circuit court.

After the letter to Penn, Forestry sent the Tax Commissioner a list of all properties granted and denied managed timberland certification for Tax Year 2016. The list showed that Forestry denied certification to Penn's properties in Randolph, Barbour and Upshur Counties. The Tax Commissioner notified the assessors in those Counties, and Penn's properties were assessed at the higher market value. Penn's tax liability increased by $523,554.98 for Tax Year 2016.[2]

Penn challenged the increase in tax liability before the Randolph, Barbour and Upshur County assessors, resulting in property tax rulings by the Tax Commissioner regarding Penn's application for certification for Tax Year 2016.[3] The property tax rulings were virtually identical. The Tax Commissioner concluded that, because Penn failed to meet the September 1 deadline set forth in W.Va. C.S.R. § 110-1H-13, Penn's properties were not eligible for valuation as managed timberland for Tax Year 2016.

**C. The Circuit Court Proceedings**

---

[2] Penn regained its managed timberland status for Tax Year 2017 by timely filing its application.

[3] The Tax Commissioner's rulings were issued pursuant to *W.Va. Code*, 11-3-24a [2010], at the assessors' request. Property Tax Ruling 16-36 was issued to the assessor of Randolph County. Property Tax Rulings 16-42 and 16-40 were issued to the assessors of Barbour and Upshur Counties respectively.

In March 2016, Penn filed petitions in the Circuit Courts of Randolph, Barbour and Upshur Counties appealing the rulings of the Tax Commissioner. Penn alleged (1) that Forestry's letter of September 21, 2015, contained incorrect advice regarding the procedure Penn could follow to challenge the denial of its application, (2) that a strict enforcement of the September 1 deadline would defeat the purpose of the Managed Timberland Program and (3) that the late filing was not prejudicial, inasmuch as Forestry's report to the Tax Commissioner regarding certifications was not due until October 1.[4] Penn asked the Circuit Courts to vacate the Tax Commissioner's rulings and direct that Penn's properties be assessed as managed timberland for Tax Year 2016. In response, the Tax Commissioner alleged that Penn's properties were assessed at a higher value for Tax Year 2016 because of Penn's admitted failure to timely file its application for certification.

The proceedings in Randolph, Barbour and Upshur Counties were consolidated in Randolph County. In September 2017, Penn filed a motion for summary judgment. Penn asserted that, because Forestry is solely authorized to classify real property as managed timberland, Penn was incorrectly informed that its only recourse was to challenge the denial of certification before the assessors. Thus, Penn asked the Circuit Court to remand

---

[4] W.Va. C.S.R. § 110-1H-13.2 states in part: "The Division of Forestry shall, on or before October 1 of each year, provide the State Tax Commission with a copy of the certifications and reports and provide a list of those properties certified as managed timberland and those denied certification."

the proceedings to the Director of Forestry with directions to consider Penn's appeal of the denial of certification.

On December 6, 2017, the Randolph County Circuit Judge entered the consolidated order affirming the three property tax rulings of the Tax Commissioner and granting summary judgment in favor of the respondents. The Circuit Court determined that, because Penn failed to timely apply for certification due to an admitted oversight, Penn's properties were correctly valued at fair market value for Tax Year 2016.

The Circuit Court acknowledged that only Forestry may certify property as managed timberland and that such authority cannot be exercised by the Tax Commissioner or by county assessors. The Circuit Court stated: "The Legislature chose to give no authority to the State Tax Department to determine whether real property should be certified as Managed Timberland and, therefore, eligible for the preferential valuation method for ad valorem tax purposes; only the Division of Forestry can make that determination." Nevertheless, the Circuit Court determined that, by following the advice of Forestry to proceed before the assessors, Penn properly obtained judicial review of the tax increase. The Circuit Court reasoned that Penn's appeal "resembles a question of classification" because the procedure followed resolved which valuation method to apply to Penn's properties for Tax Year 2016.

8

Penn appeals to this Court from the December 6, 2017, consolidated order.

## II. Standard of Review

The facts are undisputed. Therefore, the Circuit Court's entry of summary judgment in favor of the Assessors, Forestry and the Tax Department is reviewed *de novo*. *See Grant Thornton v. Kutak Rock*, 228 W.Va. 226, 233, 719 S.E.2d 394, 401 (2011) ("Upon appeal, the entry of a summary judgment is reviewed by this Court *de novo*.").

In applying the *de novo* standard, however, this Court is mindful that this appeal concerns a reading of the Tax Department's legislative rules found in Title 110, series 1H, entitled "Valuation of Timberland and Managed Timberland." A legislative rule has the force of a statute and is entitled to "controlling weight." Syl. pt. 2, *West Virginia Health Care Cost Review Authority v. Boone Memorial Hospital*, 196 W.Va. 326, 472 S.E.2d 411 (1996). *Accord* syl. pt. 3, *Grim v. E. Electric*, 234 W.Va. 557, 767 S.E.2d 267 (2014).[5]

---

[5] The term "legislative rule" is defined in the State Administrative Procedures Act in *W.Va. Code*, 29A-1-2 [2015], subsection (e) of which states in part:

> Legislative rule includes every rule which, when promulgated after or pursuant to authorization of the Legislature, has: (1) The force of law; or (2) supplies a basis for the imposition of civil or criminal liability; or (3) grants or denies a specific benefit. Every rule which, when effective, is determinative on any issue affecting constitutional, statutory or common law rights, privileges or interests is a legislative rule.

*See generally* Vol. 24, *Virginia and West Virginia Digest*, Words and Phrases, "legislative rule" (Cum. Pamphlet 2018).

Consequently, even where review is *de novo*, interpretation based on administrative expertise and discretion should be examined. *See Griffith v. Conagra Brands, Inc.*, 229 W.Va. 190, 195, 728 S.E.2d 74, 79 (2012).

### III. Discussion

### A.

Penn's properties in Randolph, Barbour and Upshur Counties have been subject to the cooperative contract with Forestry since 2009. According to Penn, the properties have, thus, been managed each year, including Tax Year 2016, in a manner consistent with the Managed Timberland Program. Nevertheless, to maintain the classification of the properties as managed timberland, Penn was required by statute to annually certify the properties with Forestry. By legislative rule, W.Va. C.S.R. § 110-1H-13, the yearly application for certification must be filed on or before September 1. Penn missed the September 1 deadline for Tax Year 2016 by sixteen days.

In rejecting the application, Penn was advised by Forestry in the letter of September 21, 2015, that its "only recourse" was to file a grievance of "valuation" pursuant to *W.Va. Code*, 11-1C-11b(e) [1998]. *W.Va. Code*, 11-1C-11b(e) [1998], provides that any person aggrieved "by any valuation of timberland" may file an objection with the county assessor. Penn followed that advice as directed, resulting in the litigation before the assessors and the adverse rulings of the Tax Commissioner strictly enforcing the September 1 deadline.

10

The Circuit Court upheld the rulings on the basis that the controversy "resembles a question of classification" because the procedure followed resolved which *valuation* method to apply to Penn's properties for Tax Year 2016.

However, the classification of timberland and the valuation of timberland are separate concepts as made clear in *W.Va. Code*, 11-1C-11b [1998]. Subsections (b) and (d) of that statute provide that timberland that is not certified as managed timberland shall be valued at its market value, whereas the value assigned to managed timberland shall always be less than the value of comparable, non-managed timberland. Neither the Tax Commissioner nor county assessors have the authority to "classify" property as managed timberland. As the Circuit Court and the parties agree, only Forestry can grant, or revoke, the certification or classification of property as managed timberland. *W.Va. Code*, 11-1C-11(b)(1) [1998], provides that "timberland *certified by the Division of Forestry* as managed timberland shall be valued as managed timberland." (emphasis added) *See W.Va. Code*, 11-1C-11b(f) [1998] (authorizing the Forestry Director to revoke certification for failure to qualify as managed timberland).[6]

_____

[6] Penn followed the advice of Forestry and proceeded before the Randolph, Barbour and Upshur County assessors under *W.Va. Code*, 11-1C-11b(e) [1998], and *W.Va. Code*, 11-3-24a [2010], regarding the valuation of its properties for Tax Year 2016. Although those statutes make passing reference to the classification of property, only Forestry can classify property as managed timberland. Forestry's brief filed in this Court states: "Forestry admits that it does have exclusive authority to certify properties as managed timberland." Moreover, as acknowledged in the Tax Department's responsive pleading to

11

Forestry's authority to classify property as managed timberland is tied to its responsibility under the Constitution of West Virginia for the "planting, cultivation, protection and harvesting" of forest lands in this State. *W.Va. Code*, 19-1A-3 [2005], provides that the Forestry Director "shall study means and methods of implementing the provisions of section fifty-three, Article VI of the Constitution of West Virginia, relating to forest lands, and shall prepare and recommend legislation thereon." Consequently, this Court holds that the West Virginia Division of Forestry has the exclusive authority to classify forest lands as managed timberland under this State's Managed Timberland Program.

**B.**

With those principles in mind, this Court turns to Forestry's letter of September 21, 2015. Penn contends that the letter violated its right to due process by misstating the procedure to challenge the denial of Penn's application for certification. The letter advised Penn that it could contest the *valuation* of its properties for Tax Year 2016 before the county assessors. The letter made no reference to a direct appeal to the Forestry Director regarding classification, which was the subject of Penn's challenge and the antecedent to the valuation of Penn's properties. Thus, Penn asserts that it should have been informed

_____

Penn's appeal filed in Randolph County: "[P]roperty can only be *valued* as managed timberland by the Tax Department when the property is *certified* as managed timberland by the Division of Forestry." (Emphasis added).

12

of its right to appeal to the Director pursuant to W.Va. C.S.R. § 110-1H-13.3.  That Rule states:

> The property owner whose managed timberland application was denied or who has been refused certification pending demonstration of specific facts may, on or before November 1 of the assessment year, file an appeal of the denial or file the requested data with the Director of the Division of Forestry.  On or before the following December 1, the Division of Forestry shall advise the Tax Commissioner of any changes of application denials.

W.Va. C.S.R. § 110-1H-13.3 creates a distinction between applications that have been denied and applications that have been refused pending the demonstration of specific facts.  In either case, the property owner may file a direct appeal with the Forestry Director. This Court finds W.Va. C.S.R. § 110-1H-13.3 to be clear and unambiguous.  Rather than unfairly enlarging Penn's rights within the context of the Managed Timberland Program, we find the direct appeal to the Director to be reasonably calculated to confirm or deny the classification of property as managed timberland.  In  syllabus point 4 of *State ex rel. Callaghan v. West Virginia Civil Service Commission*, 166 W.Va. 117, 273 S.E.2d 72 (1980), this Court observed:  "Procedures and rules properly promulgated by an administrative agency with authority to enforce a law will be upheld as long as they are reasonable and do not enlarge, amend or repeal substantive rights created by statute." *Accord* syl. pt. 6, *Griffith v. Frontier West Virginia, Inc.*, 228 W.Va. 277, 719 S.E.2d 747 (2011).  As Penn accurately notes, an incorrect classification of managed timberland will lead to an incorrect valuation of the property.

In *Lee Trace LLC v. Raynes*, 232 W.Va. 183, 751 S.E.2d 703 (2013), the owner of a newly constructed apartment complex in Berkeley County was notified by the assessor of an increase of assessment regarding the property for Tax Year 2010. The notice stated: "If you believe an adjustment in the assessed value is necessary, you should contact the County Commission sitting as a Board of Review and Equalization." The owner challenged the increase but was told by County officials that the request for review was untimely because it had not been filed by the time the Board of Review and Equalization adjourned in February 2010. On appeal, the Circuit Court of Berkeley County ruled that, inasmuch as the governing statute did not require that a particular date be given as a deadline, the notice was sufficient.

This Court, in *Lee Trace*, reversed the finding that the owner's request for review was untimely, and the case was remanded for further proceedings. Holding that the notice failed to adequately inform the owner of the right to appear and seek an adjustment of the assessment, this Court stated:

> The notice at issue here simply advised Lee Trace that "[i]f you believe an adjustment in the assessed value is necessary, you should contact the county commission sitting as a Board of Review and Equalization." No mention was made of the taxpayer's right to appear by a specified time or at a specific place, and no explanation was provided regarding the role the county commission served in the tax assessment appeals process. As a matter of due process, the taxpayer should be sufficiently alerted to his or her appeal rights, and we find that the notice at issue in this case is insufficient on these grounds. Indeed, the requirement for the government to properly advise

14

persons of their appeal rights is founded in principles of statutory and constitutional due process.

232 W.Va. at 191, 751 S.E.2d at 711.

In the current matter, the Circuit Court concluded that the procedure Penn was advised to follow "resembles a question of classification" which resulted in a determination of which valuation method to apply for Tax Year 2016. Similarly, Forestry asserts that an appeal to the Director would not have changed the result reached by the Tax Commissioner and the assessors.

Such a position blurs the distinction between classification and valuation and is unpersuasive in view of the direct appeal to the Forestry Director set forth in W.Va. C.S.R. § 110-1H-13.3, of which Penn was not informed. The respondents admit that neither the Tax Department nor the assessors are authorized to determine whether Penn's properties were entitled to certification as managed timberland. That determination belongs to Forestry alone under the Managed Timberland Program.

W.Va. C.S.R. § 110-1H-13.3 does not mean less than what is plainly said. Therefore, this Court holds that, pursuant to W.Va. C.S.R. § 110-1H-13.3, a property owner whose managed timberland application has been denied may, on or before November 1 of the assessment year, file an appeal of the denial with the Director of the West Virginia

15

Division of Forestry. By failing to inform Penn of its right to a direct appeal to the Forestry Director, Penn's right to due process was violated, especially by misstating the correct procedure to challenge the denial of its application for certification. *Lee Trace* makes clear that "the requirement for the government to properly advise persons of their appeal rights is founded in principles of statutory and constitutional due process." 232 W.Va. at 191, 751 S.E.2d at 711. *See Mizell v. Rutledge*, 174 W.Va. 639, 643, 328 S.E.2d 514, 518 (1985) (Administrative agencies must observe the basic rules of fairness as to parties appearing before them.).

## C.

This Court notes that the fact that Forestry takes the position that the September 1st deadline should be strictly upheld does not preclude Penn's right to go before the Forestry Director, as a neutral arbiter, and attempt to prove that the deadline is not absolute.[7] Relevant to Penn's case is the September 1 filing deadline in conjunction with other time

---

[7] The respondents cite four prior rulings of the Tax Commissioner wherein the September 1 deadline was strictly enforced. Two of the rulings, however, did not involve Forestry and the Managed Timberland Program. Instead, those rulings concerned a different set of legislative rules entitled "Valuation of Farmland and Structures Situated Thereon for Ad Valorem Property Tax Purposes." One of those rulings indicated that no application was filed at all regarding the Tax Year in question.

The other two rulings concerned enforcement of the September 1 deadline and a denial of managed timberland certification where the applications were untimely filed by the property owner. Both cases involved challenges by the owner by way of the assessor and Tax Commissioner. Although the assessors in both cases acknowledged that "this is a classification issue," no direct appeal to the Forestry Director was mentioned.

Consequently, the four rulings cited provide no insight regarding the current matter.

limits found in the legislative rules for "Valuation of Timberland and Managed Timberland," Title 110, series 1H.

W.Va. C.S.R. § 110-1H-13.2 states in part: "The Division of Forestry shall, on or before October 1 of each year, provide the State Tax Commission with a copy of the certifications and reports and provide a list of those properties certified as managed timberland and those denied certification." *See* n. 4, *supra*. That Rule further provides that, after the October 1 report is filed, Forestry has until January 15 of the next calendar year "to review any applications questioned by the State Tax Commission or county officials." W.Va. C.S.R. § 110-1H-13.3 provides the November 1 deadline for the appeal to the Director and further states that, on or before the following December 1, Forestry shall advise the Tax Commissioner "of any changes of application denials." Accordingly, it is clear that W.Va. C.S.R. § 110-1H-13.3 envisions situations in which denials would be reconsidered.[8]

Penn insists that those time limits show that the September 1 deadline is not absolute and that its strict enforcement would defeat the purpose of the Managed Timberland

---

[8] Inasmuch as the issues surrounding the September 1 deadline are capable of repetition, this Court recommends that the Legislature, with the input of the Tax Commissioner and the Forestry Director, consider whether the rules for "Valuation of Timberland and Managed Timberland," found in Title 110, series 1H, should be amended to clarify when the Division of Forestry may reverse a denial and to define the circumstances, if any, in which the Division may grant the application to be classified as managed timberland if such application is not filed by the September 1 deadline.

Program, *i.e.*, that Forestry would certify property where owners obtain a favorable result on appeal before the Forestry Director. Nevertheless, Penn's assertions, that the September 1 deadline is not to be strictly enforced and that Penn's forest properties are entitled to certification as managed timberland for Tax Year 2016, are more appropriately to be made before the Forestry Director on remand.

## IV. Conclusion

The December 6, 2017, consolidated order is reversed. This case is remanded to the Circuit Court of Randolph County for the entry of an order directing the Director of the Division of Forestry to review whether Penn's application for certification of its properties in Randolph, Barbour and Upshur Counties as managed timberland may be considered for Tax Year 2016, and, if the Director determines the application may be so considered, to determine whether to grant certification if the properties were managed pursuant to the requirements of the cooperative contract and the Managed Timberland Program.

**Reversed and Remanded**